Tessa Meyer Santiago (9324)
Andrew S. Gustafson (9377)
Andrew T. Curtis (13681)
Leah J. Aston (15989)
LINCOLN LAW CENTER, LLC
921 W. Center Street
Orem, UT 84057
Ph. 801-704-7855
Fax. 800-584-6826
tms@lincolnlaw.com
lja@lincolnlaw.com

*Attorneys for the Debtor.*

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**BRETT JASON HAZLETT,**<br><br>Debtor. | Bankruptcy Case No. 16-30360<br>Chapter 7<br>JUDGE Kevin R. Anderson |

## REPLY MEMORANDUM IN SUPPORT OF DEBTOR'S MOTION FOR SANCTIONS

Pursuant to Local Rule 9013-1(e), Debtor Brett Jason Hazlett ("Debtor") respectfully

submits this Reply Memorandum in support of his Motion for Sanctions ("Motion").

1

# TABLE OF CONTENTS

I.   INTRODUCTION ……………………………………………………………....3

II.  RESPONSE TO WEEKES' LEGAL ARGUMENT……………………………......3

  A.  There Is No Rule, Local Or Otherwise, That Expressly Authorizes Weekes Not
      To Collect The Debtor's Wet Signature On His Bankruptcy Petition………..…..3

  B.  Federal Bankruptcy Rules Require A Debtor's Wet Signature On Bankruptcy
      Petitions…………………………………………………………………………...5

  C.  Although Electronic Signatures Are Cheap And Easy, They Cannot Replace Wet
      Signatures……………………………………………………………………….... 6

  D.  Debtor's Motion Is Procedurally Proper…………………………………………..8

  E.  The Inaccuracies Found In The Debtor's Bankruptcy Petition Reflect Poorly On
      Weekes, Not The Debtor…………………………………………………………..9

  F.  The Services Received By The Debtor Should Be Valued At $0………………..11

III. WEEKES MAKES BASELESS AND DEFAMATORY CLAIMS REGARDING
     LINCOLN LAW'S MOTIVES AND ACTIONS…………………………...…….. 11

  A.  Additional Relevant Facts ………..………………………………………….....12

  B.   Point-By-Point Response To Weekes' Narrative………………………………..14

IV.  CONCLUSION …………………………………………………………………..23

Exhibit A: Weekes' Submission to Local Bankruptcy Rules Committee and Response

Exhibit B: Declaration of Andrew Gustafson

Exhibit C: May 25, 2016, Retainer Agreement Between Lincoln Law and Debtor

Exhibit D: Sample BK Billing Email Sent To Debtor

Exhibit E: Declaration of Andrew Curtis

## I.  INTRODUCTION

Regarding the substantive legal arguments raised in the Debtor's Motion, Russell Weekes ("Weekes") fails to point to any rule that expressly authorizes him not to collect a debtor's wet signature. He also fails to respond in any meaningful way to the multitude of cases cited by the Debtor interpreting the Federal Rules of Bankruptcy Procedure to require a debtor's wet signature. Instead, Weekes raises policy arguments that wet signatures should not be required because electronic signatures are cheaper and easier.  But, the facts in this case show that cheap and fast bankruptcy representation can result in inaccurate legal representation that endangers a debtor's bankruptcy rights.

Significantly, Weekes admits that he did not collect the Debtor's wet signature. This allowed Weekes to avoid meeting with the Debtor after the Debtor's first retainer agreement was signed, and the Debtor was left to complete his bankruptcy paperwork alone, without adequate guidance, and without adequate access to his attorney.

In his objection, Weekes also improperly moves the Court to sanction Lincoln Law, Debtor's counsel, because he views the Motion as an insidious campaign to reduce competition. Weekes offers no less than fourteen different ways that Lincoln Law's conduct is sanctionable. However, each of Weekes' attempts to discredit Debtor's new counsel fails: several accusations have no factual basis, while others rest on misrepresented fact, or misinterpreted law.      .

## II.  RESPONSE TO WEEKES' LEGAL ARGUMENT

### A.  There Is No Rule, Local Or Otherwise, That Expressly Authorizes Weekes Not To Collect The Debtor's Wet Signature On His Bankruptcy Petition.

It is true that electronic signatures of certain individuals in certain circumstances are expressly permitted in bankruptcy filings; this express permission does not mean that a wet

3

signature is not required. Allowing electronic signatures  does not mean an attorney is relieved of the bligation to collect a bankruptcy debtor's wet signature. Weekes does not seem to catch the distinction[1].

Weekes maintains that the Debtor's wet signature was not required on his bankruptcy petition because "signing by electronic means is expressly authorized by Rule 5005(a)(2) and DUCivR5-1(a)." *See* Opposition at 8. Rule 5005(a)(2) of the Federal Rules of Bankruptcy Procedure stands for the general proposition that "A court may by local rule permit or require documents to be filed, signed, or verified by electronic means." Fed. R. Bankr. P. 5005(a)(2). This rule does not authorize Weekes to collect only a debtor's electronic signature on bankruptcy petitions. Thus, it seems that Weekes is relying solely on DUCivR5-1(a) to make his argument. As already noted above, DUCivR5-1(a) states that "registered e-filers must electronically signe [sic] and file documents, as set forth in CM/ECF and E-filing Administrative Procedures Manual (ECF Procedures)." One of the signing options given to non-attorneys states that "If the document containing original signatures is not digitally available, it may be scanned and then filed electronically." *Dist. of Utah CM/ECT and E-filing Admin. Proc. Manual II (A)(3)*. This <u>single sentence</u>, in an ECF Manual that is not specific to bankruptcy, is at the heart of Weekes' insistence that a debtor's wet signature is not required on bankruptcy petitions. According to Weekes, "this procedure for filing papers containing non-attorney signatures assumes that papers that contain the original signature will be digitally available in some cases." Objection at 5, n.10.

---

[1] Weekes' Objection contains a paragraph citing 100-year-old case law standing for the position that electronic signatures have been used and recognized for over a hundred years. Objection at 6. The validity of using electronic signatures is irrelevant to whether a debtor must wet sign his or her bankruptcy petition. Weekes also argues that Utah is the leading jurisdiction in electronic signatures because it was the first state to specifically recognize electronic signatures. *Id*. Again, whether electronic signatures are valid or used in the ECF system is not directly relevant to whether a debtor's wet signature is required on bankruptcy petitions.

Admittedly, if the Court were to read this sentence on its own, in isolation, and without considering the surrounding context, the meaning of this sentence might seem ambiguous. However, this sentence does not exist in a vacuum; it is preceded by a statement that the filing attorney must maintain "the signed original" (i.e. be able to produce the signed original for inspection), and the previous two examples of ways that a non-attorney can submit an electronic signature clearly contemplate the existence of a physical piece of paper containing the non-attorney's wet signature (option A requires the filer to keep a copy of the "signed original" which "is available for inspection during normal business hours" and option B allows the filer to scan in a copy of the signature page). Finally, it must be highlighted that this single sentence is in an ECF Procedures Manual that is referred to by a Local Civil Rule that is not specific to bankruptcy procedures or the bankruptcy courts. Although e-signatures may be used in the ECF system, nothing cited by Weekes supports his position that he is expressly authorized by local rules not to collect a debtor's wet signature on bankruptcy petitions.

### B. Federal Bankruptcy Rules Require A Debtor's Wet Signature On Bankruptcy Petitions.

 Weekes correctly notes that Utah's Local bankruptcy rules "must be interpreted consistent with  . . . Federal Rules of Bankruptcy Procedure," Objection at 4, but he completely ignores the fact that the Federal Rules of Bankruptcy Procedure require a debtor's wet signature. The Debtor's Motion outlines in detail that the Federal Rules of Bankruptcy Procedure have been interpreted to require a debtor's wet signature on bankruptcy petitions. Weekes fails to respond to the Debtor's case law in any meaningful way, summarily dismissing the dozens of cases cited by the Debtor as "extra-jurisdictional rulings." *See* Objection at 4.

5

Weekes also dismisses the District of Idaho's recent holding *In re Grimmett*, 2017 Bankr.

LEXIS 1492 (Bankr. D. Idaho June 5, 2017), stating that "the court blatantly ignored and

misapplied applicable law." *See* Objection at 4, n.6. In *In re Grimmett*, an attorney at Weekes'

law firm was sanctioned, in part, for failing to collect a debtor's wet signature. The court held

that wet signatures were required, and the attorney representing Weekes' law firm assured the

court that Weekes' firm had altered its practices to conform with the rules and "now religiously

obtains wet signatures from its clients." *Id*. at *11. That Weekes now dismisses and derogates the

court's holding in *In re Grimmett* and has returned to arguing that wet signatures are not required

is disturbing: it suggests that Weekes believes himself to be above the law, and calls into doubt

Weekes' representation to Judge Pappas that he has changed his practice and now collects wet

signatures. Weekes appears determined not to collect wet signatures <u>knowing</u>[2] that they are in

fact required, and this behavior should be sanctioned.

### C. Although Electronic Signatures Are Cheap And Easy, They Cannot Replace Wet Signatures.

---

[2] Although *In re Grimmett* was an opinion out of the District of Idaho, Judge Pappas relied on cases out of the District of Idaho, the Northern District of California, and the Eastern District of California to hold that an attorney who fails to collect a debtor's wet signature is subject to sanctions under Federal Bankruptcy Rule 9011. Weekes therefore knows that the Federal Bankruptcy Rules have been interpreted to require wet signatures. Also, the Idaho local rule, which was the subject of *Grimmett* and was interpreted to require a debtor's wet signature, stated that "The original of all conventionally signed documents that are electronically filed shall be retained by the filing party for a period of not less than the maximum allowed time to complete any appellate process . . . The document shall be produced upon an order of the court." Idaho L.B.R. 5003.1(e). Utah Local Rule 5005-2(e) is similar, but even more explicit, requiring an attorney to maintain "<u>in paper form</u>" documents that are electronically filed. On September 27, 2017, Weekes also submitted a suggestion to the Local Bankruptcy Rules Committee objecting to the wet signature requirement of Local Bankruptcy Rule 5005-2(e). *See* Exhibit A. The Committee determined that the suggestion arose from the sanction imposed on Weekes in *In re Grimmett* for the very practice of failing to obtain a debtor's wet signature, and the Committee determined that Weekes' comments did not merit a modification of the proposed local rules. *Id.*Thus, Weekes knows, or has reason to know that a debtor's wet signature is required in Utah; he just refuses to comply. In addition to disgorging the Debtor's fees, this behavior warrants punitive sanctions against Weekes because "evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 576–77 (1996).

Weekes offers a number of policy reasons to support his position that wet signatures should not be required on bankruptcy petitions: first, he argues that electronic signatures don't impact how thoroughly an attorney or debtor reviews the petition. *See* Objection at 8. Second, he argues that electronic signatures are more expeditious and less expensive (for both the debtor and attorney) than wet signatures. *Id*. Third, he argues that electronic signatures are more secure. *See* Objection at 9. Finally, he argues that requiring wet signatures would create a "hardship" for debtors who live in remote locations. *Id*. at n.18. These policy arguments do nothing to make Weekes' failure to collect his client's wet signature on his petitions and schedules permissible; however, Debtor will respond to each in turn.

While it is true that collecting electronic signatures may be cheaper and easier than collecting wet signatures, the facts in this case highlight some of the reasons why it is a dangerous practice. First, in this case the Debtor met with Weekes once when he signed the first retainer agreement. Thereafter the Debtor was left on his own, with telephone help from paralegals, to complete his bankruptcy paperwork. This process was confusing and unclear for the Debtor, and when the Debtor called Capstone Law to ask questions he was not given access to an attorney and was told to "just do [his] best." *See* Doc. 27, Exhibit C, Declaration of Brett Hazlett. Requiring wet signatures encourages more in-person interactions in most cases. In this case, it may have provided the Debtor with an opportunity to ask questions and get the legal advice he needed.

Second, it is also questionable whether electronic signatures are more secure. The only thing a person needs to e-sign a bankruptcy petition is an electronic link. Here, Weekes actually sent the Debtor's bankruptcy petition and schedules to the email address of the Debtor's then-

7

girlfriend. *See* Doc. 27, Exhibit D. Anyone with access to this email account could have signed

the Debtor's petition. In this way, requiring the wet signature of the Debtor is much more secure

because a wet signature ties the Debtor to the document in question.

Finally, Weekes' feigned concern for prospective clients in remote locations such as

Moab is misplaced. Debtors in Moab can elect to retain counsel that is geographically closer, or

they can elect to utilize the services of the U.S. Postal Service for 47 cents.  Thousands of

attorneys across the country, including numerous attorneys in Utah, find a way to collect their

client's wet signatures and Weekes will too. That he currently chooses not to is not grounds to

find his practice permissible under the governing rules and case law interpreting those rules.

### D. Debtor's Motion Is Procedurally Proper.

Weekes seeks to fashion the Debtor's Motion as a Rule 9011 Motion and thereafter argue

that the Debtor's failure to comply with Rule 9011's safe harbor provision is fatal. *See* Objection

at 11. As evidence, Weekes points to the fact that the Motion "was filed under the CM/ECF

document type of a Rule 9011 Motion for Sanction." Objection at 10, n. 22. There is no

substance to this argument. When filing a Motion for Sanctions in the ECF system, the system

gives four options: you can file a Motion For Sanctions Under Section 1927, a Motion for

Sanctions for Debtor's Attorney, a Motion for Sanctions for Violation of the Automatic Stay, and

a Motion for Sanctions for Violation of the Discharge Injunction. Lincoln Law's attorney

correctly selected "Motion for Sanctions for Debtor's Attorney" as the most appropriate choice

when filing the Motion. After selecting this option, the ECF system automatically populates the

following docket text: "Motion For Sanctions for Debtor's Attorney Misconduct <u>under Rule</u>

<u>9011</u>."

8

A technical aberration in the ECF filing system does not change the substance of the Motion.  There is no way to change or remove any part of this docket text before filing. Debtor's counsel, Ms. Santiago called the court clerk the day after filing to attempt to correct the title applied by the system.  She explained that she had not filed a motion under Rule 9011, but that the system applied the title after filing.  The court clerk investigated the issue, and found no solution.  She advised Ms. Santiago to just leave it as is because the court would be able to figure it out as the Debtor's Motion very clearly moves the Court to sanction Weekes pursuant to 11 U.S.C. § 329 and § 105.

### E. The Inaccuracies Found In The Debtor's Bankruptcy Petition Reflect Poorly On Weekes, Not The Debtor.

Weekes argues that the many inconsistencies and problems with the Debtor's statements and schedules show only that the Debtor is at fault for failing to disclose information. Objection at 12. However, the information provided by Weekes in the Objection shows that there are inconsistencies and problems with his attempt to shift blame to the Debtor.

As a preliminary matter, Weekes offers conflicting accounts regarding the process by which the Debtor completed the Client Intake Form. In the Objection Weekes states, "Counsel met with the Debtor for in-depth, in-person for [sic] consultation where the Debtor completed a client intake form . . . performed a public records search and questioned the Debtor regarding his responses and omissions." Objection at 12. However, in Weekes' declaration he states that "Prior to the initial consultation Hazlett completed an intake form." *See* Objection, Exhibit A, para. 5. In actuality, the Debtor was left on his own to complete the intake form. Later, the Debtor was emailed another "Client Questionnaire," which he had to complete on his own. *See id.* at para. 18.

9

Weekes then criticizes the Debtor for failing to disclose an interest in his girlfriend's vehicle on an Intake Form; for failing to list an interest in his girlfriend's bank accounts, and for failing to list his girlfriend/fiancee as a dependent.[3] Weekes further criticizes the Debtor for failing to list certain information on the Client Questionnaire. One of the items the Debtor failed to disclose was a phone, but the Client Questionnaire lists dozens of types of personal property for a debtor to declare and a phone is not listed as an option, so it is unclear how the Debtor should have known to list it. *See* Objection, Exhibit B. Weekes also faults the Debtor for failing to list a ring payment that was in his girlfriend's name, failing to disclose an interest in his girlfriend's bank account, and failing to list a payment for a vehicle loan in his girlfriend's name, but nothing in the Client Questionnaire explains that this information was required and the Debtor was asked to complete these forms <u>on his own</u>. *Id.* Debtors hire attorneys to prepare bankruptcy petitions precisely because the information requirements can be overwhelming and difficult to understand. The Debtor did his best under the circumstances, but he fell short because he had inadequate counsel and guidance. Any omissions by the Debtor were innocent: when Andrew Curtis met with the Debtor to prepare a bankruptcy petition, and actually took the time to explain the different information requirements, the Debtor was forthcoming and honest in the information he provided. Weekes failed to adequately advise the Debtor and admits to several other "clerical oversights." *See* Objection at 13. Disgorging the Debtor's fees is an appropriate and proportionate sanction to deter similar behavior in the future.

---

[3] Weekes does not attach a copy of the Debtor's Intake Form, nor did he include this Intake Form or Client Questionnaire in the Debtor's client file which was emailed to Lincoln Law. It is highly unlikely that the Intake Form adequately explains who qualifies as a dependent or explains that the Debtor had an equitable interest in his girlfriend's car.

10

**F. The Services Received By The Debtor Should Be Valued At $0.**

The Debtor's fees should be disgorged 1. because Weekes failed to collect the Debtor's wet signature, even though he knew or should have known that wet signatures are required on bankruptcy petitions, and 2. because Weekes' failure to adequately counsel and represent the Debtor resulted in an inaccurate bankruptcy petition that now needs to be amended by Lincoln Law.

Weekes characterizes his fees as reasonable and not excessive, but the Debtor's Motion cites to multiple cases which show that fee disgorgement is an appropriate sanction when an attorney fails to collect a debtor's wet signature, or when the work performed is "poor quality." *See* Doc. 27 at 15. Weekes' handling of the Debtor's bankruptcy demonstrated systemic deficiencies in client communication and advisement and exemplified a lack of respect for the bankruptcy rules. By failing to collect the Debtor's wet signature Weekes advised the Debtor to violate the bankruptcy rules, reducing the value of his services to nothing.

III.    **WEEKES MAKES BASELESS AND DEFAMATORY CLAIMS REGARDING LINCOLN LAW'S MOTIVES AND ACTIONS.**

Rather than accepting responsibility for the fact that he failed to carefully prepare the Debtor's bankruptcy petition and failed to collect the Debtor's wet signature, Weekes has crafted a narrative suggesting that Gustafson and/or Lincoln Law solicited the Debtor as part of an "insidious marketing scheme to reduce competition." Objection at 15. This narrative, along with Weekes' associated request for sanctions, lacks any factual basis, and is simply an attempt by Weekes to distract from his own violative behavior.

11

**A.  Additional Relevant Facts**

1.  On May 17, 2016, the Debtor contacted Lincoln Law to inquire about the possibility of filing for bankruptcy. *See* Exhibit B, para. 3,  Declaration of Andrew Gustafson.

2.  On May 25, 2016, the Debtor met with Andrew Curtis, attorney at Lincoln Law, for a bankruptcy consultation appointment. *Id.* at para. 4.

3.  That same day, on May 25, 2016, the Debtor signed a retainer agreement with Lincoln Law, retaining Lincoln Law to file a Chapter 7 bankruptcy case on behalf of the Debtor. *See* Exhibit C.

4.  Between May and October 2016, the Debtor and Lincoln Law had at least nine different interactions, including additional phone calls and appointments, a number of which were with attorneys, to discuss the bankruptcy filing. *See* Exhibit B, para. 6.

5.  Lincoln Law uses software to organize and keep track of clients. *Id.* at para. 2.

6.  Lincoln Law regularly reviews its client files to identify clients who have not filed their bankruptcy. *Id.* at para. 7.

7.  Lincoln Law is interested in understanding why some clients choose to retain other bankruptcy attorneys so that it can improve its services. *Id.* at para. 8.

8.  Lincoln Law has an ethical and professional responsibility to communicate with its clients, to ensure that its clients' bankruptcy needs are met, and to identify whether a client is still intending to be represented by Lincoln Law.

9.  On May 15, 2017, the Debtor's bankruptcy case was closed. (Doc. No. 13).

10. On this same day, Weekes' representation of the Debtor ceased. *See* Doc. No. 27, Exhibit B, showing that Weekes was retained only to represent the Debtor's Chapter 7 bankruptcy.

11. Nearly four months later, on September 6, 2017, Andrew Gustafson ("Gustafson") called the Debtor to inquire about his bankruptcy experience at Lincoln Law and to learn why the Debtor had chosen to retain a different attorney. *See* Exhibit B, para. 9.

12. During this phone call the Debtor told Gustafson that he had had a bad experience with Russell Weekes. The Debtor also stated that he had some questions about his bankruptcy, and in particular expressed concern that he was being sent invoices from a company called BK Billing. The Debtor stated that he was unhappy that BK Billing had his mother's credit card number and was continuing to withdraw monthly payments despite the Debtor asking them to stop withdrawing payments from the card. *Id.* at para. 10.

13. Gustafson felt ethically bound to investigate the Debtor's concerns. As such, Gustafson offered to review the Debtor's bankruptcy and answer any questions he had about his bankruptcy. *Id.* at para. 11.

14. The Debtor then signed a second retainer agreement with Lincoln Law to pursue claims arising out of his Chapter 7 bankruptcy filing. *Id.* at para. 12.

15. Thereafter an attorney from Lincoln Law met with the Debtor to review his bankruptcy petition. Lincoln Law learned that Weekes failed to perform a reasonable and professional review of the Debtor's property and failed to obtain the Debtor's wet signature. *Id.* at para. 13.

13

16. The Debtor continues to receive invoices from BK Billing. *See, e.g.* BK Billing Notice of Missed Payment attached as Exhibit D.

17. Given that the U.S. Trustee is also investigating Russell Weekes for multiple violations of the Bankruptcy Code, s*ee* Doc. No. 30, the Debtor decided to limit his claims against his former counsel to Weeke's failure to collect his wet signature, highlighting the systemic deficiencies in the petition prepared by Weekes. *See* Exhibit B, para. 15.

**B**.  **Point-By-Point Response To Weekes' Narrative**

Weekes' request for sanctions against Lincoln Law brought in his response to Debtor's motion is procedurally improper.  The rules clearly state that one cannot seek direct relief in an opposition.  *See* L. R. 9013-1(e)(4), stating that "No motion may be included in a response or reply memorandum. Such a motion must be made in a separate document." Weekes' request should be denied on that basis alone.

Substantively, Weekes argues that sanctions against Lincoln Law are justified for at least fourteen different reasons, *see* Objection at 15-17.  Each of these arguments fails.

1. Weekes argues broadly that the Debtor's Motion is an abuse of the judicial process designed to harass competitors and reduce competition. Weekes offers no evidentiary support for this claim; nor is it clear how a ruling in the Debtor's favor would increase Lincoln Law's market share. This accusation is a broad, personal attack, and under this vague and indeterminate standard any legal proceeding could be characterized as an attempt to reduce competition. If anything, this statement by Weekes is an admission that his practice of failing to

14

collect wet signatures gives him a competitive advantage, which should further cause the Court to scrutinize his behavior.[4]

2.      Weekes argues that Lincoln Law has unnecessarily placed the Debtor's discharge in jeopardy and exposed the Debtor to risk.  His arguments deflect attention from his own culpability.  It was the U.S Trustee, currently investigating Weekes for multiple violations that have endangered and jeopardized Debtor's bankruptcy, who filed the motion to reopen. Weekes also failed to act to protect his former client from harassing collection emails from BK Billing for bankruptcy fees that should have been discharged. Lincoln Law was hired to attempt to recoup the fees collected in violation of the discharge order.

3.      Weekes argues that Lincoln Law and/or Gustafson have violated numerous Rules of Professional Conduct, including:

a.      Rule 7.3. Weekes accuses Gustafson of violating Rule 7.3 of the Utah Rules of Professional Conduct by allegedly soliciting the Debtor as a client for his own pecuniary gain. Rule 7.3 states that "A lawyer shall not . . . solicit professional employment from a prospective client when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain." As a preliminary matter, when Gustafson called the Debtor on September 6, 2017, it is unclear whether the Debtor was a prospective client; the Debtor had signed a retainer agreement with Lincoln Law and neither party had ever expressly terminated this agreement. *See* Exhibit 1, and Exhibit 2. Even assuming that the Debtor was no longer Lincoln Law's client on September 6, 2017 when Gustafson called the Debtor, it is not unethical for a law firm to reach out to past clients, who are no longer

---

[4] Elsewhere in the Objection, Weekes acknowledges that not collecting wet signatures is cheaper for him because he does not need to coordinate schedules with the debtor, pay for postage, or store and print documents. Objection at 8-9.

represented by counsel, to better understand the client's experiences at the law firm in an effort to improve its legal service. Almost immediately after calling the Debtor, Gustafson learned that the Debtor was not satisfied with Weekes' service and that the Debtor was continuing to receive collection invoices related to his bankruptcy. *See* Exhibit 1. Gustafson felt an ethical obligation to help the Debtor.

As alleged evidence of Lincoln Law's pecuniary motives, Weekes points to the fact that Lincoln Law is seeking attorney's fees and restriction of Weekes' filing privileges. Given that Weekes failed to provide the representation he promised the Debtor, the Debtor is entitled, under his retainer agreement with Weekes, to recover reasonable attorney's fees for bringing the Motion. The possibility of recovering attorney's fees did not motivate Lincoln Law to bring the Motion, and, in fact, if Lincoln Law is not awarded attorney's fees it stands to lose a substantial amount of money on this case which it will not recover from the Debtor. Regarding Weekes' filing privileges, in preparing to bring the Motion, Lincoln Law researched the wet signature requirement in bankruptcy petitions and found that judges often restrict an attorney's ECF filing privileges as a sanction for failing to collect a debtor's wet signature. *See, e.g. In re Dean*, 2013 WL 3306418 at *5–6 (Bankr. E.D. Cal. June 28, 2013) (Attorney ordered to file copies of "wet signature" pages with the court for a period of two years); and *In re Whitehill*, 514 B.R. 687 (M. D. Florida 2014) (Attorney required to file all wet signatures with the court). Thus, restricting Weekes' filing privileges is a reasonable sanction to request, and since it would not stop Weekes from representing Chapter 7 debtors, it is unclear how Lincoln Law has anything to gain by suggesting this as a possible sanction.

16

b.    <u>Rule 3.3(a)(1)</u>. Weekes accuses Lincoln Law of recklessly making a false statement of fact by representing that Weekes charged the Debtor $3,120 for bankruptcy services. Instead, Weekes states that the total amount paid by the Debtor was $2,400. The first retainer agreement signed by the Debtor states that Weekes charged $0 while simultaneously scheduling three payments of $240 to be deducted, for a total of $720. *See* Doc. 27, Exhibit A. The second retainer agreement signed by the Debtor states that the fee charged is $2,400. *See* Doc 27, Exhibit B. The total of these two amounts is $3,120. If Weekes did in fact charge the Debtor $2400 for his bankruptcy, this is not clear by reviewing the two retainer agreements, and this does not explain why the Debtor was scheduled to make payments under his first contract, which was allegedly for $0, but was in actuality for $720. Moreover, Weekes scheduled these payments to come out on 10/02/2016, 12/06/2016, and 12/20/2016. *See* Doc. 27, Exhibit A. The Debtor's bankruptcy was filed on November 22, 2016, meaning that these payments constitute a clear violation of the automatic stay.

c.    <u>Rule 4.1(b)</u>. Weekes accuses Lincoln Law of knowingly making a false statement to the U.S. Trustee by exaggerating Weekes' fees to $3,120. See explanation under 3(b) above.

d.    <u>Rule 3.3(a)(2)</u>. Weekes accuses Lincoln Law of knowingly or recklessly failing to disclose to the Court DUCivR 5-1, which, Weekes claims, is an authority directly adverse to the position of the Debtor. Rule 3.3(a)(2) states that "A lawyer shall not knowingly . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction <u>known to the lawyer to be directly adverse</u> to the position of the client <u>and not disclosed by opposing</u>

17

counsel." First, Weekes' argument is moot because he, as opposing counsel, has

disclosed the rule to the Court in his Objection. Second, and more importantly, it is

entirely unclear how or why DUCivR 5-1 is a legal authority directly adverse to the

Debtor's position. The current version of DUCivR 5-1, states that "registered e-filers

must electronically signe [sic] and file documents as set forth in CM/ECF and E-filng

Administrative Procedures Manual (ECF Procedures)."[5] However, the ECF Procedures

clearly state that "[d]ocuments that are required to be signed by persons who are not

counsel of record (e.g. verified pleadings, contracts, affidavits, etc.) may be submitted in

electronic format in any of the following ways, provided that the filer <u>maintains the</u>

<u>signed original</u> until all appeals have been exhausted or the time for seeking appellate

review has expired:

> a. An electronic version of the document bearing "/s/name" can be filed along with a statement that the filer has the signed original, for example:
>> /s/ Party Smith*
>> (* I certify that I have the signed original of this document which is <u>available for inspection</u> during normal business hours by the Court or a party to this action.)
>> Electronic Signature or /s/Filing Attorney
>
> b. An electronic version of the document bearing "/s/name" can be filed with a scanned copy of <u>the signature page</u> as an attachment.
>
> c. If the document containing original signatures is not digitally available, it may be <u>scanned</u> and then filed electronically.

*Dist. of Utah CM/ECT and E-filing Admin. Proc. Manual II (A)(3).* The language used in

these three options suggests that the ECF Manual requires non-attorneys to wet sign

documents, and to the extent that the requirements in the ECF Procedures are ambiguous,

---

[5] Weekes cites an older version of DUCivR 5-1 which stated, "Papers may be filed, signed, and verified by electronic means consistent with the administrative procedures (ECF Procedures) adopted by the court to govern the court's electronic case filing system." (Statute as of Dec. 1, 2016).

Weekes has conceded that the wet signature requirement is an issue of first impression in Utah, *see* Objection at 4, meaning that Lincoln Law could not knowingly fail to disclose the rule to the Court because it is not <u>known</u> to be directly adverse to the Debtor's position.

e.      <u>Rule 3.3(b)</u>. Weekes accuses Lincoln Law of offering evidence which a Lincoln Law attorney "knows to be false." Weekes explains that because Andrew Curtis attended the 341 meeting at the same time and on the same date as the Debtor, he "know [sic], or should have known" that the Debtor was not represented by a paralegal at the meeting. *See* Objection at 16. First, the standard under Rule 3.3(b) is whether an attorney <u>knows</u> that information is false, not whether the attorney should have known. Andrew Curtis regularly attends 341 meetings. These meetings are typically attended by 8-9 debtors, spouses, debtor attorneys, and creditors. Weekes has not offered any evidence to suggest that Andrew Curtis saw or recognized the Debtor or his attorney at the 341 meeting, let alone that he knew that the Debtor was not represented by a paralegal at the 341 meeting. *See* Exhibit E, Declaration of Andrew Curtis.

f.      <u>Rule 4.4(b)</u>. Next, Weekes mistakenly cites rule 4.4(b) but actually appears to be arguing that Lincoln Law violated Rule 4.2(a). Rule 4.2(a) states that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer." First, when Gustafson called the Debtor on September 6, 2017, the Debtor was no longer represented by Weekes, since the Debtor's

19

bankruptcy had been filed and discharged four months prior.[6] Second, even assuming that the Debtor was still represented by Weekes, it is an open question as to whether Lincoln Law could violate Rule 4.2(a) when the Debtor had signed a retainer agreement with Lincoln Law to file the Debtor's Chapter 7 bankruptcy and this agreement had not been formally terminated by either party. *See* Exhibit C.

g.    Rule 4.3(a). Rule 4.3(a) states that "In dealing on behalf of a client with a person who is not represented by counsel . . . The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel." It is entirely unclear from Weekes' Objection what behavior he thinks Lincoln Law engaged in that would violate this rule. Weekes refers to the fact that an attorney from Lincoln Law met with the Debtor and his wife to review the Debtor's bankruptcy petition, but Weekes does not claim that Lincoln Law gave any legal advice to the Debtor's wife, nor could he, because no legal advice was given to the Debtor's wife. *See* Exhibit E, Declaration of Andrew Curtis.

4.    Weekes argues that Lincoln Law has exposed the Debtor to perjury and fraud charges by claiming that the Debtor's signatures were forged. To be clear, the Motion does not argue that the Debtor forged his own signatures. Neither party disputes that the Debtor electronically signed his bankruptcy petition. What the Motion does argue, is that Weekes is guilty of forgery because he electronically filed bankruptcy documents bearing an electronic signature, and thereby represented to the court that he had obtained the Debtor's wet signature when, in fact, the documents were not actually or validly signed.

---

[6] If anything, Weekes himself may have violated Rule 4.2(a) by talking with the Debtor when the Debtor was represented by counsel (Lincoln Law), and by not advising the Debtor to cancel his retainer agreement with Lincoln Law prior to filing his bankruptcy.

Multiple courts have found that this behavior on the part of an attorney constitutes a forgery. *See, e.g., In re Wenk*, 296 B.R. 719, 725 (Bankr. E.D. Va. 2002). Bringing Weekes' forgery to the Court's attention does not endanger the Debtor. Neither has Lincoln Law exposed the Debtor to perjury charges. To establish perjury under 18 U.S.C. § 1621, it must be shown that the person charged knowingly made a false and material declaration under oath in a proceeding before or ancillary to any court of the United States. *See In re Howard Komendant CPA, P.C.*, 2012 WL 1098550 (Bankr. N.J. 2012) citing *United States v. Gorman*, 613 F.3d 711, 715–16 (7th Cir. 2010). Liability under § 18 U.S.C. § 152 requires (1) a declaration, certificate, verification or other statement made under penalty of perjury; (2) in or in relation to a bankruptcy case or proceeding; (3) which is false; (4) material; and (5) made knowingly and fraudulently. *See* 1–7 COLLIER ON BANKRUPTCY ¶ 7.02[3][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Under both statutes, each element of the crime must be proven beyond a reasonable doubt.

In this case, the Debtor did not knowingly and fraudulently fail to disclose assets, and as such, bringing the inaccuracies of the Debtor's petition to the Court's attention does not place the Debtor at risk. In fact, courts have clearly ruled that an unintended error is not a knowingly false material declaration and does not constitute "perjury." *See, e.g., In re Howard Komendant CPA, P.C.*, 2012 WL 1098550 (Bankr. N.J. 2012).  After one routine meeting between the Debtor and a Lincoln Law attorney, it was evident the the Debtor did not have adequate help or assistance to complete his bankruptcy forms. Any failure on the part of the Debtor to include information in his bankruptcy petition was the result of Weekes' inadequate legal representation. Without adequate legal help, it is unreasonable to expect the Debtor to know and understand that he had

21

an equitable interest in his fiancee's bank account or that payments made to his fiancee's car payment constituted an insider payment. Inaccuracies in the Debtor's petition reflect only the poor services provided by Weekes, and are not a reflection on the Debtor--who did the best he could under the circumstances. The Debtor was asked to complete his bankruptcy forms alone, and when he attempted to ask for help he didn't receive it. Weekes argues that Lincoln Law derogated its client's best interests by pointing out that the Debtor failed to list all of his assets, contradicting his testimony at the 341 meeting. See the explanation to number 4 above. Weeke's failure to provide adequate legal representation is the root cause of Debtor's failure to correctly list his assets.

5.      Weekes argues that Lincoln Law failed to timely file a 2016 Attorney Compensation Statement. Rule 2016(b) of the Federal Rules of Bankruptcy Procedure states that "Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, <u>or at another time as the court may direct</u>, the statement required by §329 of the Code . . ." An order for relief is generally understood in this jurisdiction to refer to a debtor's bankruptcy petition date and because Lincoln Law never filed the Debtor's Chapter 7 Bankruptcy, it was not required to file a 2016 Attorney Compensation Statement.  Regarding the present Motion before the Court, the 2016 Attorney Compensation Statement filing requirement is unclear, and Lincoln Law will be happy to comply with any direction from the Court.

6.      Weekes argues that Lincoln Law failed to prepare and file amendments to the Debtor's statements and schedules. Lincoln Law prepared the required amendments to the

Debtor's statements and schedules prior to filing the Debtor's Motion. They will be filed shortly, along with a declaration from the Debtor.

7.      Weekes argues that Lincoln Law has exposed the Debtor to bankruptcy fraud claims, revocation of discharge, and administration of assets by stating that the Debtor made improper insider payments. See the explanation to number 4 above. The Debtor received inadequate legal representation and therefore did not know that he had failed to list his assets correctly. Lincoln Law has continued to act in the best interests of the Debtor by preparing the necessary amendments to correct the Debtor's schedules, and by filing a Motion seeking the disgorgement of fees for inadequate legal representation to meet the Debtor's immediate need for relief from BK Billing's continued invoices.

Having laboriously responded to each of Weekes' fourteen different accusations against Lincoln Law and/or Gustafson, it is clear that Weekes' accusations have no basis in fact, miscite or misrepresent the law, and amount to little more than a smear campaign and diversionary tactic. Weekes' request for sanctions against Lincoln Law should be denied.

## IV. CONCLUSION

The Debtor's Motion should be granted. Weekes should be sanctioned for his behavior, including disgorging the Debtor's fees, and the Court should issue a clear holding that wet signatures are required on all bankruptcy petitions filed in the District of Utah.

Respectfully submitted, this 5th day of December, 2017.

> /s/ Tessa Meyer Santiago
> Tessa Meyer Santiago
> LINCOLN LAW
> *Counsel for the Debtor*

23

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of December, 2017, I caused the foregoing **REPLY IN SUPPORT OF DEBTOR'S MOTION FOR SANCTIONS** to be electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system, as noted below:

Kenneth A. Rushton, Trustee
Russell Weekes, Debtor's former counsel

Further, I certify that a copy of the **MOTION** was forwarded via email to

Brett Jason Hazlett, Debtor

/s/ Tessa Meyer Santiago
Tessa Meyer Santiago

24