Russell B. Weekes (10214)
Tyler Vermillion (14457)
**Capstone Law, LLC**
207 East 860 South
Orem, Utah 84058
T: (801) 783-1888
F: (888) 612-4236
E: *ecf@capstonelaw.net*
*Attorneys for Defendants*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| In re: | CASE No. 16-30360 |
|---|---|
| **BRETT JASON HAZLETT,** | Chapter 7 |
| Debtor. | JUDGE Kevin R. Anderson |

**DEFENDANTS MOTION FOR SUMMARY JUDGEMENT OF THE UNITED STATES TRUSTEE'S MOTION FOR SANCTIONS AND MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**

Comes now Russell B. Weekes ("Counsel") and Capstone Law, LLC ("Capstone") (collectively "Defendants"), by and through counsel, pursuant to Rule 56 Fed. R. Civ. P. and Rule 7056 of the Federal Rules of Bankruptcy Procedure, and respectfully moves the Court for summary judgment in favor of Defendants on all issues presented by the Office of The United States Trustee for the District of Utah ("UST"), in that no material issues of fact are in dispute and as a matter of law, Defendants are entitled to judgment in their favor.

**STATEMENT OF UNDISPUTED FACTS**

1.      Brett Jason Hazlett ("Debtor") initially sought bankruptcy assistance from Lincoln Law Center, LLC ("Lincoln Law"), which required Debtor to pay Lincoln Law's

attorney fee in full prior to filing Debtor's Chapter 7 bankruptcy. *See* Debtor's 2004 Exam

Transcript, pp. 21-23, attached as Exhibit D (hereinafter "Exam Transcript").

2.      A judgement had been entered against Debtor in Utah District Court Case, case

number 169403458, in the amount of $7302.03 on November 14, 2016. *See* Docket of Case No.

169403458, attached as Exhibit H.

3.      During the Initial Consultation Defendants offered the following three

engagement options to Debtor to file a chapter 7 bankruptcy:

> a.      pay the attorney's fee and hard costs in advance of filing the
>
> bankruptcy case ("Upfront Amount Option");
>
> b.      file the bankruptcy petition, statement of social security number,
>
> and application to pay the court filing fees in installments (collectively
>
> "Emergency Bankruptcy Papers") for $500 down and to enter into a second post-
>
> petition fee agreement to complete Debtor's bankruptcy case; and
>
> c.      file Emergency Bankruptcy Papers for $0 down and to enter into a
>
> second post-petition fee agreement to covering post-petition services for $2,400 to
>
> be paid in monthly $240 payments for 10 months ("$0 Down Option").
>
> *See* Declaration of Russell Weekes, ¶ 13 attached as Exhibit A
>
> (hereinafter "Declaration"); Exam Transcript pp. 21-24, 37-39.

4.      Debtor compared and evaluated the costs of filing bankruptcy between Lincoln

Law, LLC and multiple options available through Defendants. *See* Exam Transcript pp. 21-24,

37-39.

5.      During the Initial Consultation Defendants explained paragraph by paragraph the

contents of the Prepetition Agreement, the limited scope of services under the Prepetition

Agreement, the total costs under the Post-petition Agreement, the Two-Contract Disclosure and

the Third-Party Disclosure and Consent. *See* Declaration, ¶ 15; Affordable Bankruptcy Retainer

Agreement a/k/a Two Contract Procedure ¶¶ 1, 3-4, Two-Contract Disclosure, a true and correct

copy is attached as Exhibit B (hereinafter "Pre-petition Agreement"); Completion Retainer

Agreement & Promissory Note, a true and correct copy is attached as Exhibit C (hereinafter

"Post-petition Agreement"), ¶ 1; Exam Transcript, pp. 21-24, 37-39.

6.      The Pre-petition Agreement excludes post-petition services, requires Defendants

to perform pre-petition services *pro bono*, required Defendants to continue as counsel of record

unless and until the case is closed, dismissed, or the court enters an order authorizing Defendants

to withdraw, and if further engaged, the Defendants will perform post-petition services for

$2,400 under a second post-petition agreement, inclusive of the court filing fee and other costs.

*See* Pre-petition Agreement, ¶¶ 1, 3, 4, and Two-Contract Disclosure.

7.      Debtor made an informed decision to pay an increased fee because he recognized

that the circumstances he asked Defendants to work under warranted an increase in the fee.

Exam Transcript, pp. 21-24, 37-39.

8.      Defendants utilized Adobe Sign—a commercially available third-party E-

signature application—to review and obtain Debtor signature by electronic means in the Pre-

petition Agreement, Emergency Papers, Post-petition Agreement, and Completed Bankruptcy

Papers. Declaration, ¶ 16.

9.      When sending a document through Adobe Sign for review and electronic

Signature, recipient receives an e-mail cover letter containing a hyperlink to open the document

and requires the recipient to consent to consumer disclosures explaining:

a.   his right or option to have the record provided or available on paper or in nonelectronic form, and the right to withdraw consent to have the record provided or made available in electronic form and of any conditions, consequences, or fees imposed in the event of such withdrawal;

b.   that his consent applies (a) only to the particular transaction which gave rise to the obligation to provide the record, or (b) to identified categories of records that may be provided or made available during the course of the parties' relationship;

c.   of the procedures to withdraw consent and to update information needed to contact the Debtor electronically; and

d.   A statement of the hardware and software requirements for access to and retention of the electronic records. *See* Adobe Sign Document History p.1-4, attached as Exhibit G (hereinafter "E-Sign History").

10.     Prior to viewing and signing the Pre-petition Agreement, Emergency Bankruptcy Papers (defined below), Post-petition Agreement, and Completion Bankruptcy Papers (defined below), Debtor acknowledged the Consumer Disclosures and confirmed his consent by electronically checking a Consent to Do Business Electronically checkbox that was electronically rendered by the Adobe Sign software. *Id.*

11.     The Pre-Petition Agreement contained several fields, which required or permitted the Debtor's interaction by clicking on the field and inputting requested information, including an address, payment method, payment dates and payment amounts under the Execution and Authorization section. *See* Declaration, ¶ 17.

12.     The interaction fields described in paragraph 13 were sent by Weekes blank. *Id.*

13.    Debtor reviewed the Pre-petition Agreement multiple times before signing. *See* E-Sign History p.1.

14.    Debtor entered the address information, amounts, dates, and selected Manual as the Payment Method on the Fee Draft Authorization section of the Pre-petition Agreement. *See* Pre-petition Agreement, p. 3; Declaration, ¶ 19.

15.    After entering the information described in paragraphs 16, Debtor signed the Pre-Petition Agreement by electronic means on October 29, 2016 at approximately 5:45 PM. *See* E-Sign History p.1.

16.    Debtor knew and understood that to complete his bankruptcy case he would pay no money down to file an emergency bankruptcy petition, sign a second post-petition agreement for a total of $2,400, inclusive of court costs. *See* Pre-Petition Agreement, ¶¶ 3, 4, Two-Contract Disclosure; Exam Transcript pp. 22-24; Post-petition Agreement, ¶ 1.

17.    Bankruptcy courts have recognized that without bifurcated representation the bankruptcy "system would suffer a massive breakdown." *See Gordon v. Hines (In re Hines)*, 147 F.3d 1185 (9th Cir. 1998); *Sanchez v. Gordon (In re Sanchez)*, 241 F.3d 1148 (9th Cir. 2001).

18.    Debtor's Official Form 101 (bankruptcy petition) and Official Form 121 (Statement About Your Social Security Number, collectively "Emergency Bankruptcy Papers") were e-mailed to Debtor in complete electronic form via Adobe Sign on November 22, 2016 for review and electronic signature prior to filing said bankruptcy papers with the Bankruptcy Court.

19.    The Adobe Sign email containing the Emergency Bankruptcy Papers, contained the following message:

> "Please find the attached Petition, statement, and schedules. Please CAREFULLY REVIEW EACH PAGE TO ENSURE THAT IT IS COMPLETE, ACCURATE, AND TRUTHFUL.

1 - Schedule A should list any real property in which you have an ownership interest. This includes land, a home, time shares or other real estate.

2 - Schedule B should list all of your personal property. Carefully read each line to ensure that nothing is missing and that the information provided is complete and accurate. This schedule should include any money on hand, money owed to you, all personal possessions like furniture, tools, clothing, jewelry, and equipment.

3 - Schedule D should list your all of your secured creditors such as your mortgage, car loans, and other debts that are attached to collateral. A good rule of thumb is if you stop making a payment to a creditor and you believe they can take the property back, the creditor should be listed on this schedule.

4 - Schedule E should list any tax liabilities or domestic support obligations.

5 - Schedule G should list any leases you have. This includes apartment eases and cell phone, gym or other service contracts.

6 - Schedule H should list any co-debtors there are on any of your loans who are not filing with you.

7 - Schedule I shows you an average of your projected income moving forward.

8 - Schedule J is the monthly household budget.

9 - Carefully review each question and each answer on the Statement of Financial Affairs. IF YOU HAVE ANY QUESTION, OR ANY CHANGES THAT NEED TO BE MADE, PLEASE DO NOT SIGN AND CONTACT US IMMEDIATELY. If everything looks accurate, please promptly sign the document.

20.    Debtor reviewed and signed the Emergency Bankruptcy Papers by electronic means using Adobe Sign software application on November 22, 2016. *See* E-Sign History, p. 2.

21.    After the Debtor signed the Emergency Bankruptcy Papers by electronic means Debtor's Emergency Bankruptcy papers were filed electronically with the Bankruptcy Court on November 22, 2016. *See* Docket No. 1.

22.    After the Emergency Bankruptcy Papers were filed with the court, Defendants e-mailed Debtor the Post-petition Agreement on November 22, 2016 via Adobe Sign and Debtor

reviewed and signed the agreement by electronic means on the same date. *See* E-Sign History, p. 3, attached as Exhibit H.

23.    Defendants prepared and e-mailed Debtor Official Forms 106A/B, 106C, 106D, 106E/F, 106G, 106H, 106I, 106J, 106Dec, 107, 108, 122A - 1, 2010, Disclosure of Compensation of Attorney for Debtor(s), and Verification of Creditor Matrix ("Completed Bankruptcy Papers") on December 5, 2016 via Adobe Sign.

24.    Debtor opened the Completed Bankruptcy Papers multiple times, and signed the Completed Bankruptcy Paper by electronic means using Adobe Sign on December 5, 2016. *See* E-Sign History, p. 4.

25.    Defendants prepared and filed Debtor's remaining bankruptcy papers, represented the Debtor at a §341 meeting, provided documents to the Trustee pursuant to 11 U.S.C. § 521 and otherwise assisted the Debtor in all tasks necessary so that Debtor received a discharge of his debts pursuant to 11 U.S.C. §727 on March 15, 2017. *See* Docket Nos. 7-11.

26.    In early 2013 Russell Weekes met with Laurie Cayton ("Cayton") from the US Trustee's office to discuss the use of electronic signatures and post-petition payments for bankruptcy services. *See* Declaration, ¶ 51.

27.    After explaining to Cayton that electronic signature require, and expressing a willingness to change Defendants procedures until such time that a court could rule on the use of electronic signatures, Cayton told Defendants that she did not see a problem with signing or verifying bankruptcy papers by electronic means because the debtor was provided a complete copy of the bankruptcy papers and signed the documents with the verifications required by the official forms. *See* Declaration, ¶¶ 53-55.

28.    Cayton asserted that UST's position was that post-petition payments arising under a prepetition agreement were stayed and discharged and suggested Defendants draft bifurcated agreements pursuant to *Bethea v. Robert J. Adams & Assocs.*, 352 F. 3d 1125, 1127 (7th Cir. 2003).

29.    After the meeting with Cayton, Weekes researched post-petition payments and drafted bifurcated agreements, relying heavily on the requirements outlined in *Walton II*, and provided them to Cayton for review. *See* Declaration, ¶¶ 57-58.

30.    On March 1, 2013 Cayton sent Weekes an email confirming that the UST's office believed Defendants Two-Contact Procedure agreements fully comply with the Bankruptcy Code. *See* Declaration, ¶ 57, Schedule C.

31.    The Pre-petition Agreement and Post-petition Agreement (collectively "Bifurcated Agreements") are derived from and substantially similar to the bifurcated agreements that Cayton recognized fully comply with the Bankruptcy Code. *See* Declaration, ¶ 60.

32.    At the commencement of and throughout the Debtor's bankruptcy case, DUCivR 5-1(a) stated: "Papers may be filed, signed, and verified by electronic means consistent with the administrative procedures (ECF Procedures) adopted by the court to govern the court's electronic case filing system. A paper filed by electronic means in compliance with the ECF Procedures constitutes a written paper for the purpose of applying these rules. *See* United States District Court For The District of Utah, Rules of Practice, Dec. 2016, attached as Exhibit J.

33.    On May 15, 2017 an order was entered closing the Debtor's chapter 7 bankruptcy case. *See* Docket No. 12.

34.    Lincoln Law phoned the Debtor after his bankruptcy case had closed to solicit a

case review of Debtor's bankruptcy case. *See Exam Transcript pp. 129-33.*

35.     The Debtor's case was reopened on September 25, 2017.   *See Docket No. 19.*

36.     At no time since the closing of the Debtor's bankruptcy case has a motion to revoke the Debtor's discharge been filed.

37.     Debtor has paid a total of $1,800 towards his bankruptcy fees as required under the Post-petition Agreement. *See BK Billing Payment Records, attached as Exhibit E.*

38.     Debtor's attorneys prepared a proposal to the Local Rules Committee and advocated an increase in the chapter 13 no-look fee, wherein Debtor's attorneys acknowledged that $3,000 or more is a reasonable chapter 7 fee, even when the case is relatively simple in nature, and that a reasonable hourly rate for an attorney with similar experience as Defendants is in excess of $350 per hour. *See Andrew S. Gustafson, Andrew T. Curtis, et al, Proposal to Increase the Presumptive Chapter 13 Fee for Debtor's Counsel in the District of Utah (Nov. 20 2017), attached as Exhibit F.*

39.     BK Billing is a finance company that provided Defendants an up-front loan financing that factored Defendants' promissory note under the Post-petition Agreement. *See Declaration, ¶ 59.*

40.     BK Billing collects the scheduled payments authorized by the Debtor under the Post-petition Agreement to repay the loan. Declaration, ¶ 60.

41.     If Debtor does not pay under the Post-petition Agreement Defendants are required to repay BK Billing the full amount financed. Declaration, ¶ 61.

42.     The Utah State Bar Advisory Opinion Committee found that "sale or encumbrance of accounts receivable is not sharing fees with a non-lawyer" and "there is a significant difference between sharing legal fees with a non-lawyer and paying a debt with legal

fees." *See* [Opinion No. 17-06, ¶ 14, Utah State Bar Ethics Advisory Opinion Committee,](#)

[September 27, 2017](#) (hereinafter "Ethics Opinion").

## ARGUMENT

**Introduction**

UST's Motion for Sanctions is an attempt to disregard all contractual obligations of the

Debtor and of the Defendants. This is folly. UST disregards the actual language of the agreement

between the parties and ignores the undisputed facts of the case presented to the Court. Instead,

UST asks the Court to focus on hypothetical fact patterns. This is also folly. Defendants, as

discussed in detail below, provide a valuable service to struggling consumer debtors at a fair and

reasonable price—it was no different in the current case. Defendants contracted with Debtor.

During the negotiation of the contract Debtor was aware of his rights, his options, and his

obligations under the contract. Debtor chose his path to a fresh start with his eyes wide open. As

such, Defendants are entitled to a judgment dismissing UST's Motion for Sanctions, as will be

discussed below, because:

1. Defendants complied with Local Rule 2091-1 when they provided the services under

    the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local

    Rules of the Bankruptcy Court of the District of Utah.

2. Defendants' disclosure of fees both to the Debtor and to the Court comply with 11

    U.S.C. 392(b) because the arrangement with BK Billing is no different than using

    lines of credit or checking accounts to finance the work of bankruptcy attorneys.

    a. the fee charged by the Defendants was reasonable;

    b. There is no conflict of interest that warrants denial of compensation;

    c. BK Billing's involvement in the funding of the case does not create an ethical

conflict of interest;

    d.    Defendants' disclosure of compensation was accurate and does not warrant

         disgorgement of fees; and

    e.    Any argument for sanctions for failure to file accurate filings must be made

         under Bankruptcy Rule 9011 and therefore is improperly brought before the

         Court and should be dismissed as a matter of law.

3.    Defendants complied with Bankruptcy Code regarding disclosure of compensation

    and the entering of agreements.

    a.    All documents filed by Defendants with the Court have contained true and

         forthright statements; and

    b.    Debtor was clear how much and when he was to make payments.

4.    Defendants are entitled to costs and attorney's fees under 28 U.S.C. § 2412 and 5

    U.S.C. § 504.

**I.**    **Defendants complied with Local Rule 2091-1 when they provided the services required under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of the Bankruptcy Court of the District of Utah.**

    UST sets up a "straw man" in an attempt to present an issue that is not in controversy.

UST argues that Defendants failed to comply with LBR 2091-1 because of an alleged

unbundling of services. However, the only way UST can reach that conclusion is to treat the

actual contract language as "perfunctory." *See* UST Motion for Sanctions, Docket No. 61, pg. 16.

In its own motion, UST recognizes that the language of the contract complies with LBR 2091-1

and is left arguing that the effect, not the actual language, of the agreement is that of unbundling.

However, UST does not allege that Defendants failed in their duty to provide bankruptcy

services during the entire pendency of the case notwithstanding Debtor's failure to pay for such

services. Any alleged deficiencies in the quality of work provided by Defendants is a claim

related to legal malpractice and subject to state court jurisdiction.[1] Thus, the contract language

coupled with Defendants' performance of the contract render UST's argument moot. Defendants

represented Debtor during the entire pendency of the case, Debtor received a discharge of his

debts[2], and his case was closed[3].

Contrary to UST's assertions that the language is merely perfunctory, contracts are

meaningful and the language contained in contracts matters. Defendants' compliance with their

contractual and statutory obligations entitle Defendants to summary judgment with regard to

their compliance with LBR 2091-1.

II.     **Electronically Signed Documents Are Expressly Permitted and Constitute "a
        written paper" under the Bankruptcy Code and Federal Rules of Bankruptcy
        Procedure.**

The U.S. Trustee argues that the use of secure, commercially adopted, E-signature

software is prohibited by local bankruptcy rules and thus is sanctionable. This argument fails

because the rules in effect at the time of the filing allowed for electronic verification of any

document filed in the U.S. District Court of Utah and retention of such electronic document

constituted a written document under the applicable rules.

UST's cited cases are unpersuasive to the case at bar because they applied significantly

different rules and relied on unsubstantiated claims regarding the susceptibility of fraud when

using electronic signatures.

---

[1] Bankruptcy courts lack subject-matter jurisdiction over malpractice claims—even if the alleged
malpractice is related to bankruptcy. *Gunn v. Minton*, 133 S. Ct. 1059 (2013); (*Binder v. Price
Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154 (3d Cir. 2004) ("Bankruptcy courts can
only act in proceedings within their jurisdiction."). Debtor has not brought a state court claim for
malpractice. Neither has Debtor provided any evidence of damages.
[2] Docket No. 11.
[3] Docket No. 12.

All local bankruptcy rules are subject to the Utah District Court rules and cannot
contradict those rules. Local bankruptcy rules are required to exist consistent with the Utah
District Court Rules for the "consideration and resolution [of bankruptcy matters] consistent with
the law." DUCivR 83-7.1. The bankruptcy court can only adopt rules that are "not inconsistent
with Title 11 and Title 28 of the United States Code, the Federal Rules of Civil Procedure, the
Federal Rules of Bankruptcy Procedure, and the District Court Rules of Practice of the United
States District Court for the District of Utah." *Id.* 7.6.

Thus, the inquiry of whether using a commercially adopted e-signature software is
sanctionable should begin with a review of whether such practice violates Title 11 and Title 28
of the United States Code, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy
Procedure, and the District Court Rules of Practice of the United States District Court for the
District of Utah. A review of the primary source material and relevant case law reveals that using
electronic signature software and storing such signatures is not a violation of any of the federal
statutes or district court rules applicable to the case at bar.

In fact, Weekes' practice is specifically compliant with Federal Bankruptcy Rule
5005(a)(2) when read in conjunction with the Utah District Court Rule 5.1(a)[4] . Under
5005(a)(2), documents in bankruptcy proceedings may "be filed, *signed, or verified* by electronic
means *consistent with technical standards . . . .*" FRBP 5005(a)(2)(emphasis added). DUCivR
5.1(a) applicable at the time of the filing of the bankruptcy case stated: "Papers may be filed,
signed, and verified by electronic means consistent with the administrative procedures adopted
by the court. . . ." DUCivR 5.1(a). When both rules are read in concert, the use of commercial e-
signature software developed by Adobe, one of the leading software developers in the world, is

---

[4] *See* Exhibit J, DUCivR 5-1(a) that was in effect at all times during this case.

an acceptable form of verification for signatures of debtors.

An analysis of other federal rules supports the position that maintaining original documents via electronic means is an acceptable manner of verification. For instance, the Federal Rules of Evidence define an "original" as any "writing or recording itself or any counterpart intended to have the same effect by the person who executed or issued it" and "[f]or electronically stored information, 'original' means *any printout*—or other output readable by sight – if it accurately reflects the information." FRE 1001(d).

The next step in the analysis is to evaluate whether UST's reading of LBR 5005-2(e) is inconsistent with any superseding rules or statutes. When considered against the applicable District Court Rules[5], the UST's reading of the rule results in the local rule contradicting the District Court's adopted Rule 5.1(a). The applicable DUCivR5.1(a) stated: "A paper filed by electronic means in compliance with the ECF Procedures constitutes a ***written paper*** for the purpose of applying these rules." DUCivR5.1(a)(emphasis added).

UST argues that because Weekes maintained the records electronically, his practice violated LBR 5005-2(e) because 5005-2(e) requires documents be maintained in "paper form." UST's allegation that electronically maintained signature pages are not "paper form" subverts the District Court's recognition that electronically filed documents, that are complaint with ECF Procedures, are "written paper."  While "paper form" and "written paper" are undefined, it seems consistent that a "written paper" would satisfy the definition of "paper form." Again, it is important to note that the District Court rule trumps the local bankruptcy rules every time.

Further, Debtor does not dispute that he reviewed and personally signed the statements, schedules and related documents. UST alleges that the e-signatures somehow do not manifest an

---

[5] *Id.*

actual signature of Debtor. UST argument, however, is another example of a "straw man" when considered against the facts of the case at bar. Debtor verified at his creditors meeting, held pursuant to 11 U.S.C. § 341, under oath that he reviewed the statements before they were filed with the court and that he signed the statements, schedules and related documents. There is no dispute that the signatures were intended to be signatures within the meaning of the local rules.

Finally, as a policy, denying a debtor's ability to use federally and state recognized secure technology in the prosecution of a bankruptcy case seems counter to legislative and recent local judicial intent. *See* Utah Bankr. Ct. General Order 18-001.  The UST's proposed limitation on the use of available technology would be punitive to the population in the federal district of Utah where much of the population lives in rural areas and adequate legal representation is unavailable.

**III.    Defendants' disclosure of fees both to the Debtor and to the Court comply with 11 U.S.C. § 329(b) Because the Arrangement with BK Billing is no Different Than Using Lines of Credit or Checking Accounts to Finance the Work of Bankruptcy Attorneys**

UST properly cites 11 U.S.C. 329(b) which requires disclosure of compensation paid or agreed to be paid to the attorney representing the debtor. Defendants also agree with the Trustee's citation of *In re Investment Bankers, Inc.*, in that § 329 exists to prevent bankruptcy attorneys from charging excessive, unreasonable, and unfair fees. However, UST grossly misrepresents its position on the reasonableness of fees in general. UST's reasonableness argument smacks of pandering to Lincoln Law's desire to limit competition. Defendants find it very unlikely that UST would have objected to the fee had it been paid in full pre-petition.[6] However, Section 329 is not a "vehicle for sanctioning a debtor's attorney." *In re Petrovic*, 560

---

[6] Attached as Exhibit F, is a report provided to the Court by Lincoln Law regarding chapter 13 fees. In that report a relevant section regarding a survey of chapter 7 fees approved by the court and not objected to by the UST shows that frequently for "simple" cases fees in excess of $2,007 are not uncommon.

B.R. 312, 317 (Bankr. N.D. Ill. 2016). "In statutory interpretation we look to the plain language

of the statute and give effect to its meaning." _Schusterman v. United States_, 63 F.3d 986, 989

(10th Cir. 1995). The express terms and purpose of Section 329 are "limited; it regulates 'the

relationship between a debtor and the debtor's attorney." _Id._ at 316. "Its purpose is not to protect

the bankruptcy system as a whole…." _Id_. "The sole question under § 329, then, is whether 'the

fee charged by the attorney is excessive i.e., that it exceeds the reasonable value of the services

provided…'" _Id_.

> **a. The fee charged by Defendants is reasonable considering the facts and circumstances of the case.**

Under the Bankruptcy Code, the only reason for which the Court could order Counsel to

disgorge fees is if the "compensation exceeds the reasonable value" of services performed by the

bankruptcy attorney. 11 U.S.C. § 329(b).

UST states the incorrect amount of the attorney fee sought in the underlying case as

$2400.00 however, this fee is inclusive of costs. Defendants only charged $2007.00 in attorney

fees for services rendered. This fee is the standard amount charged by Defendants for cases that

involve post-petition fee arrangements.

Here again, UST's arguments obfuscate the terms of the written contract between the

Debtor and Defendants. Defendants were willing to provide the pre-petition services for free and

take upon them the duties under the local rule with the understanding that Debtor would be able

to make a choice post-petition: 1. Continue with Defendants, 2. Ask Defendants to withdraw and

proceed pro se, 3. Find other counsel and request a substitution of counsel. UST recognizes in

their brief that much of the bankruptcy services necessary to effectuate meaningful bankruptcy

relief are required post-petition. _See_ UST Motion for sanctions, Docket No. 61, pg 15-16.

Defendants have provided a list of the services preformed post-petition and the amount of the

hourly rate typically charged by Defendants in bankruptcy representation. UST does not engage

in a meaningful evaluation of the work preformed post-petition, but make blanket unsupported

allegations that disregard the agreement reached by Defendants with Debtor.

As UST notes, the fee must be considered in a holistic approach that evaluates the facts

and circumstances of the case. *See In re Jensen*, 113 B.R. 51, 55 (Bankr. D. Utah 1990). Further,

the Tenth Circuit has held that the factors set forth in § 330(a)(3) (along with the Johnson

factors) must be considered in determining whether an attorney's fees are reasonable. *Houlihan*

*Lokey Howard & Zukin Capital v. Unsecured Creditors' Liquidating Tr.* (*In re Commer. Fin.*

*Servs.*), 427 F.3d 804 (10th Cir. 2005). Factors set forth in § 330(a)(3) are: (1) the time spent on

such services; (2) the rate for such services; (3) whether the services were necessary to the

administration of a case; and (4) whether the services were performed within a reasonable

amount of time; (5) whether the profession has demonstrated skill and experience in the

bankruptcy field; and (6) whether the compensation is reasonable for comparably skilled

practitioner outside the bankruptcy context.

Defendants charged a reasonable fee considering the facts and circumstances of this

case.[7] There is no dispute that a judgment had already been entered against Debtor in Utah

District Court, case number 169403458, in amount of $7,302.03 on November 14, 2016. Debtor

was worried about the risk of garnishment and would not be able to pay his ongoing living

expenses for his family had a 25% garnishment taken his wages.[8] Debtor could not pay the full

amount of the bankruptcy fee up front. The only way for Debtor to stop the execution of the

judgment was to file bankruptcy immediately. Debtor requested that Defendants assist him in

preparing and filing an emergency petition to ensure that the judgment creditor did not get a writ

[7] *See* Declaration, Schedule B.
[8] Exam Transcript, p. 19.

of continuing garnishment. Debtor had already consulted with Lincoln law and had been quoted a fee of $1,600.00. The Debtor made an informed decision to pay an increased fee to Defendants because he recognized that under the circumstances an increased fee was warranted.[9]

Debtor asked Defendants to immediately prepare and file an emergency case. Defendants were required to move Debtor to the front of the line in their preparation, they were also required to file a request to the pay the fee in installments. Debtor contracted with Defendants to take these extraordinary steps so that he could get the relief he desired. Defendants then filed a notice of bankruptcy in the state court case and Debtor was protected from any subsequent risk of garnishment from the judgment-creditor. UST is correct in that Debtor was never garnished—thanks to the swift actions taken by Defendants under the contract.

There is little doubt that had the entire $2,007.00 fee been paid up front, UST would not have objected to the fee.[10] It seems that UST's reasonableness argument is hollow and should be dismissed as a matter of law.[11]

### b. There is no conflict of interest that warrants denial of compensation.

Ethic concerns are serious and need to be fully considered when evaluating attorney actions, however, no ethical concerns are implicated here.

UST again seeks to minimize the actual written contract and chooses to engage in arguments against a "straw man" that do not exist. UST does not allege that Defendants took any action that prejudiced or negatively affected their representation of Debtor, but rather deals in a hypothetical situation that is not presented to the Court in this case. It is certainly true that bankruptcy attorneys have a duty to investigate and analyze cases prior to filing. That duty is

---

[9] *Id.* at pp. 21-24, 37-39.
[10] UST doesn't appear to have objected to any of the cases listed in Section 3.5, Fee Proposal.
[11] UST's real intent in bringing this motion is laid bare—BK Billing and its principles, who have been in UST's crosshairs before. *See* UST Motion for Sanctions Docket No. 61, Pg 5 fn. 2.

balanced within the bankruptcy code against circumstances where immediate relief is needed. Further, and perhaps most telling, UST fails to make any argument as to where Defendants failed in this duty.

Seemingly the UST argues that if any legal client owes their attorney money there is a conflict that would prevent the attorney from continued representation of the client. This is a patently incorrect application of the ethical rules. While an attorney who chooses to represent a client that is behind on his bill still owes the utmost of duties to the client, the attorney is not prohibited from representing that client. In this situation, and the UST does not provide any facts to the contrary, Defendants provided ethical and competent assistance and the Debtor received his fresh start.

### c. BK Billing's involvement in the funding of the case does not create an ethical conflict of interest.

UST alleges that BK Billing is a funding entity for Defendants. *See* UST Motions for Sanctions, Docket No. 61, pg. 23. UST's real intent in bringing this case against Defendants is again laid bare. UST argues that BK Billing is used to increase Defendants' client base (*Gasp). UST is correct in assuming that Defendants wish to provide competent legal assistance to as many consumer bankruptcy clients as possible. This is not unethical.

Trustee is incorrect in concluding that Counsel not disclosing his relationship with BK Billing amounts to fraud or even negligence. The arrangement between Defendants and BK Billing is very similar in nature to attorneys using SBA loans, credit cards, or even debit cards to pay for filing fees, personnel costs, and legal work performed by the attorney when the attorney and the debtor have entered an agreement under which the Debtor will make monthly payments to pay off his or her balance with the attorney.[12] A large percentage of bankruptcy attorneys offer

---

[12] Ethics Opinion, ¶ 14 (paying a factoring company is paying a debt with legal fees).

low- or no-down-payment options to clients, and many use lines of credit or checking accounts to pay for all costs until the debtors pay off the amount agreed to under their professional service agreements. The compensation paid to the attorney initially comes from the lender or from the bank holding the attorney's funds, and as the attorney receives payments from the debtors, the attorney then pays that money back to the lender or back into the attorney's account. Disclosure of these sources of funding is not normally requested by a Trustee or by the Court. Very similarly, BK Billing provides up-front funding to bankruptcy attorneys. The only difference is that debtors make their monthly payments to BK Billing instead of to the attorney.[13] Similar to other funding entities, BK Billing makes money by providing a valuable service to the attorney. If UST's argument is taken to its logical end, any debtor's counsel who uses an SBA loan, credit cards, or even debit cards for funds that are on deposit with a bank, would be subject to a disclosable conflict of interest. This is simply not true.[14]

Further, UST cannot dispute that Debtor was aware of BK Billing funding his BK fees, and he agreed to make post-petition payments to BK Billing.  Debtor was made aware of this arrangement through the agreement he and Defendants signed prior to filing his case.[15] BK Billing provided an effectual line of credit to Defendants, and Defendants charged a reasonable fee to Debtor. Defendants did not use BK Billing to perpetuate fraud or to increase the amount charged to Debtor. For these reasons, Defendants' Motion for Summary Judgment should be

---

[13] Declaration, ¶ 60.

[14] Ethics Opinion, ¶ 16 (only when a current conflict of interest exists under Rule 1.6(b) between the lawyer's interest, the client's interest and the interest of the funding company in being paid must be discussed with client and the client give informed consent, confirmed in writing when waiting such conflicts).

[15] *See* Declaration ¶ 15; Affordable Bankruptcy Retainer Agreement a/k/a Two Contract Procedure ¶¶ 1, 3-4, Two-Contract Disclosure, a true and correct copy is attached as Exhibit B (hereinafter "Pre-petition Agreement"); Completion Retainer Agreement & Promissory Note, a true and correct copy is attached as Exhibit C (hereinafter "Post-petition Agreement"), ¶ 1; Exam Transcript pp. 21-24, 37-39.

granted with respect to Trustee's argument regarding disclosure of attorney compensation.

### d. Defendants' disclosure of compensation was accurate and does not warrant disgorgement of fees.

UST argues that funds from BK Billing must be disclosed pursuant to Rule 2016. However, the ethics opinion cited by UST and authored by the Utah State Bar clearly indicates that using a factoring company, or funding company, is not the equivalent to a fee share.[16] UST shifts its argument from the actual language of the Bankruptcy Rules in an attempt to assert that the fee for the bankruptcy is not really being paid by Debtor.

This argument likewise falls flat when considering the services that BK Billing provides. BK Billing is a finance company that funds the consumer debtor's counsel so that debtor's counsel can provide services to consumer debtors. Not unlike a fee paid to case prep software companies, billing software companies, mail servicing companies, financing companies, banks/credit unions, landlords, and many other service providers that facilitate an attorney's legal practice. The official form 2030 on file with the Court accurately describes the compensation that was agreed to be accepted and the funds ultimately were to be paid by the Debtor, himself. There is no basis to disgorge fees for lack of disclosure.

### e. Any argument for sanctions for failure to file accurate filings must be made under Bankruptcy Rule 9011 and therefore is improperly brought before the Court and should be dismissed as a matter of law.

Further, if UST wished to bring a motion for a deficient filing with the Court, the proper mechanism to seek sanctions is Rule 9011. Sanctions for deterring improper filings and attorney conduct is governed by Rule 9011. *In re Petrovic,* 560 B.R. 312, 317 (Bankr. N.D. Ill. 2016). The failure to follow Rule 9011 procedural steps is fatal to a request for sanctions. *See id.*

Here, if UST seeks relief for a deficient filing, it should have followed the correct

---

[16] Ethics Opinion, ¶ 14.

procedural steps. As in *Petrovic*, it "was incumbent on [the U.S. Trustee] to move for sanctions under Rule 9011, citing the Rule and complying with its procedural requirements to pursue sanctions for "improper" filings. *Id.* Because UST failed to follow Rule 9011 procedure, any request for sanctions related to deficient filings should be dismissed.

**IV.    Defendants complied with Bankruptcy Code regarding disclosure of compensation and the entering of agreements.**

UST requests sanctions under 11 U.S.C. § 526(a)(2) for an alleged untrue or misleading statement being filed with the Court. Defendants refer the Court to Section III.e above.

However, even if the Court chooses to review UST's request for sanctions, Defendants have not violated the provisions of 11 U.S.C. § 526.

**a.    All Documents filed by Defendants with the Court have contained true and forthright statements.**

Again, UST makes allegations that are not supported by the facts of the case nor by the contractual agreement between the parties. UST argues that under § 526(a)(2) that the attorney compensation disclosure is untrue or misleading for failure to list BK Billing. This assertion mischaracterizes Defendants' relationship with BK Billing and completely disregards the Utah State Bar Ethics Opinion that treats the matter. The Utah State Bar specifically stated that the use of a "factoring" or funding company does not equate to fee sharing. The receipt of funds secured by accounts receivable does not equal the payment of a debtor's attorney fees. BK Billing does not contract with the Debtor to provide payment to attorney. The source of the funds paid to Defendants is Debtor. In fact, if Debtor does not pay his full fee, Defendants would not receive the full fee agree to from BK Billing.[17] Under the actual contract at issue in the case, Debtor is the source of the funds and those funds are not legally split with another entity. Defendants use

---

[17]

BK Billing as a service and the use of this service is regulated by a contract similar to other services used for ease of administration in legal practice.

All UST arguments concerning digital signatures are treated in section II. of this motion.

### b.  Debtor was clear how much, when and to whom he was to make payments.

UST again sets up a "straw man" to argue that the agreements were confusing. However, Debtor testified and he has never wavered, that he understood the terms of the agreement including to how much he was paying, when he was to make payments and to whom he was supposed to make payments.[18]

The agreements are clear and Debtor recognizes them as such.[19] Debtor understood that he was receiving an emergency petition filing for no money down.[20] Debtor understood that he would be responsible for additional fees should he choose to proceed with the case and if he should choose to have Defendants provide such services.[21] Debtor understood the cost of such service that would be performed by Defendants. Debtor had sufficient information that he could shop the amount stated by Defendants and in fact had already shopped prices with other bankruptcy offices, including Lincoln Law.[22] Debtor chose to stay with Defendants when he signed a contract. UST now wishes to void the contract, even though Debtor has never testified to being confused about the terms of his agreement. Just because a party, not present during the

---

[18] Exam Transcript, pp. 22-24.

[19] *Id*.

[20] *Id.*

[21] Pre-petition Agreement, ¶ 4; Post-petition Agreement, ¶ 1; Exam Transcript, pp.22-24, 37-39.

[22] *See* Exam Transcript pp. 21-24, 37-39. During the Initial Consultation Defendants explained paragraph by paragraph the contents of the Prepetition Agreement, the limited scope of services under the Prepetition Agreement, the total costs under the Post-petition Agreement, the Two-Contract Disclosure and the Third-Party Disclosure and Consent. *See* Declaration ¶ 15; Affordable Bankruptcy Retainer Agreement a/k/a Two Contract Procedure ¶¶ 1, 3-4, Two-Contract Disclosure, a true and correct copy is attached as Exhibit B (hereinafter "Pre-petition Agreement"); Completion Retainer Agreement & Promissory Note, a true and correct copy is attached as Exhibit C (hereinafter "Post-petition Agreement"), ¶ 1; Exam Transcript pp. 21-24, 37-39.

negotiation of such contract, feigns confusion at the terms, does not render the agreement

confusing. When the Debtor is clear as to how much, when and to whom he has to pay, the

agreement should be determined to comply with 11 U.S.C. § 526. Defendants are entitled to

judgment as a matter of law that the agreements were clearly explained to Debtor and that the

filed Form 2030 is accurate.

## V.  Defendants Are Entitled to Costs and Attorney's Fees under 28 U.S.C. § 2412 and 5 U.S.C. § 504

The Court may award a judgment for costs and reasonable fees and expenses of attorneys

"to the prevailing party in any civil action brought by or against the United States or any agency

or any official of the United States acting in his or her official capacity in any court having

jurisdiction of such action."[23]  The purpose of the Equal Access to Justice Act "is to ensure that

private parties will not be deterred from seeking review of or defending against unjustified

governmental action due to expense entailed, and to discourage federal agencies from taking

frivolous positions."[24] Pursuant to the broad language employed by Congress in § 2412(d)(1)(A),

"the plain and unambiguous statutory language gives 'any court,' including the bankruptcy court,

the power to make a fee award under the EAJA."[25]

UST is an agency of the United States and were acting in his or her official capacity in

bringing UST's Motion for Sanctions. Therefore, the court may award costs and reasonable fees

to Defendants in this matter.

Defendants should be awarded costs and fees to defend against this action for the

following reasons: (1) UST position regarding electronic signatures contradicts the plain

meaning of DUCivR 5-1(a); (2) UST brought this action to sanction Defendants for permitting

---

[23] 28 U.S.C. § 2414
[24] Miles v Bowen (1986, MD Ala) 632 F Supp 282.
[25] O'Connor v. United States Dep't of Energy, 942 F.2d 771, 774 (10th Cir. 1991).

Debtor to sign or verify his bankruptcy papers by electronic means when UST previously

represented to Defendants that they did not believe there were any issues with signing

bankruptcy papers by electronic means; (3) UST brought this action to invalidate Defendants'

Two-Contract procedure when UST had previously represented to Defendants that Defendants'

Two-Contract approach "fully comply with the requirements of the Bankruptcy Code."; (4) UST

alleged Defendants' filed documents contained untrue or misleading statements signed by the

attorney, but failed to file a separate motion and comply with the statutory two-step procedure to

allege such claims; (5) UST argued that Defendants' Pre-petition Agreement is confusing after

the Debtor testified during a 2004 Exam that he fully understood the terms of the agreements and

payments; (6) UST argues that Defendants unlawfully limited the scope of representation of the

Debtor even though UST knew Defendants represented Debtor in all aspects of his bankruptcy

case and the Debtor obtained a discharge.

Based on the number and extent of unjustifiable positions taken by UST, to deter UST,

and so that Defendants will not be deterred from seeking review of or defending against

unjustified governmental action, Defendants should be awarded costs and reasonable fees.

## CONCLUSION

The UST seeks to avoid a valid contract entered into post-petition by Debtor. While the

Bankruptcy Code and Rules appropriately provide protection for debtors, it does not eliminate a

debtor's right to contract. The Code and the Rules merely seek to ensure that the fees charged are

reasonable and that debtors are informed before they make the decision to file bankruptcy and

whom they hire to assist them in this difficult process. UST mischaracterize the facts of the case

at bar in an attempt to relieve Debtor from his contractual obligations.

Debtor admitted that he understood the contract, both pre and post-petition. Debtor

received the benefit of the bargain, yet has failed to pay the negotiated price of the bargain. Debtor conducted market research by visiting with more than one bankruptcy attorney and ultimately chose to use Defendants over other options. The amount charged by Defendants is reasonable considering the facts and circumstances of the case and also considering market prices for chapter 7 bankruptcies. Defendants otherwise complied with disclosure and filing requirements.

The facts, undisputed by UST, demonstrate that Defendants are entitled to judgment as a matter of law.

WHEREFORE, Defendants pray that the Court grant this motion for summary judgment and award Defendants costs and reasonable fees.

RESPECTFULLY SUBMITTED this this 20th day of November 2018.

**Capstone Law, LLC**


/S/ Russell B. Weekes_____
Russell B. Weekes
*Attorney for Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **DEFENDANTS MOTION FOR SUMMARY JUDGEMENT OF THE UNITED STATES TRUSTEE'S MOTION FOR SANCTIONS AND MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT** was served on the following via the Court's Electronic Filing System:

Bankruptcy Trustee
Kevin R. Anderson

United States Trustee

LINCOLN LAW CENTER, LLC
Tessa Meyer tms@lincolnlaw.com
Leah J. Aston lga@lincolnlaw.com

DATED and SIGNED this 20th day of November 2018.

/S/ Russell B. Weekes_____
Russell B. Weekes