**This order is SIGNED.**

Dated: October 17, 2019



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

*ar*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| In re: | Bankruptcy Number: 16-30360 |
|---|---|
| BRETT JASON HAZLETT<br>Debtor. | Chapter 7<br><br>Hon. Kevin R. Anderson |

MEMORANDUM DECISION ON MOTION FOR
SUMMARY JUDGMENT (DOCKET NO. 136)

In this case, the Debtor found himself in need of immediate bankruptcy relief arising

from the entry of a default judgment. The Debtor initially sought the legal services of Lincoln

Law to represent him in a Chapter 7 case, but he ultimately declined their representation because

he lacked the funds to pay Lincoln Law's required pre-petition retainer. The Debtor then

contacted Capstone Law, which offered a bifurcated fee arrangement that involved no retainer for

filing the petition, and then a post-petition fee agreement to ultimately pay $2,000 in ten monthly

installments. The Debtor and Capstone Law agreed, signed the required documents, filed the

Chapter 7 case, and the Debtor expeditiously received a discharge. Based on the issues raised by

the attorney's use of the bifurcated fee agreements, the U.S. Trustee successfully moved to re-

open the Debtor's bankruptcy case. Thereafter, Lincoln Law brought a motion for sanctions

against Capstone Law and later was substituted as Debtor's counsel. Capstone Law filed a

motion for summary judgment against Lincoln Law.[1] On May 3, 2019, the Court held a status

conference to address Capstone's unresolved Motion for Summary Judgment against Lincoln

Law.[2] The parties agreed that the last remaining issue for decision in the Motion is whether a

violation of the automatic stay occurred under 11 U.S.C. § 362.

## I.   JURISDICTION AND VENUE

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(a)–

(b), 157(b). Capstone's Motion for Summary Judgment is a core proceeding under 28 U.S.C.

§ 157(b)(2)(H). Venue is appropriate in this District under 28 U.S.C. §§ 1408–1409, and notice

of the hearing was properly given to all parties in interest.

## II.   FACTS[3]

1.      To the extent not explicitly set forth below, the Court incorporates its findings of

fact contained in its Memorandum Decision on Motion For Summary Judgment at ECF No. 155.

### A.      The Debtor's Pre-Petition Meetings with the Two Bankruptcy Firms

2.      On or about May 25, 2016, the Debtor met with Lincoln Law regarding the

possible filing of a Chapter 7 bankruptcy case. The Debtor and Lincoln Law signed a "Contract

for Chapter 7 Bankruptcy Services" (the "Lincoln Law Contract").[4] The Lincoln Law Contract

provided that it was not valid until the Debtor paid at least a $200 fee. Lincoln Law conceded at

the hearing that the Debtor never paid the $200 fee. The Lincoln Law Contract further provides

---

[1] ECF No. 136.

[2] See Minute Entry, May 3, 2019.

[3] The Court has already made a number of these findings of fact in its memorandum decision on the U.S.
Trustee's motion for summary judgment (see ECF No. 155).

[4] ECF No. 43-3 and 43-4.

that the "client is free to consult with another attorney at any time, and may discharge the firm at any time."

3. On October 5, 2016, the Debtor was sued on a collection action in a Utah state court. On November 14, 2016, the state court entered a default judgment against the Debtor for $7,302.[5]

4. Prior to the entry of the default judgment, the Debtor again contacted Lincoln Law Center and was told he would need to first pay a $1,200 retainer before Lincoln Law would file the bankruptcy petition.[6]

5. The Debtor did not have $1,200 to pay a retainer to Lincoln Law.[7]

6. The Debtor then contacted Russell B. Weekes and his law firm Capstone Law, LLC ("Capstone Law" or "Capstone") about filing for bankruptcy.[8]

7. During the initial consultation on October 27, 2016, Mr. Weekes offered the Debtor three options to accomplish the filing of a Chapter 7 bankruptcy case: [9]

   i.   The Up-Front Retainer Option: Pay Capstone Law a retainer of $2,400, which included the attorney's fees and court filing fee, to file and represent the Debtor in a Chapter 7 case.

   ii.  The $500-Down Option: Enter into a pre-petition agreement and pay a $500 retainer for the preparation and filing of the bankruptcy petition, statement of social security number, and application to pay the court filing fees in installments (collectively

---

[5] ECF No. 155 at 2, ¶ 1 (hereinafter "Memorandum Decision").

[6] *Id.* at ¶ 2.

[7] *Id.* at ¶ 3.

[8] *Id.* at ¶ 4.

[9] *Id.* at ¶ 5.

the "Initial Bankruptcy Papers"). The Debtor would then have three options: (1) proceed

*pro se*; (2) hire another attorney to complete the case; or (3) enter into a post-petition fee

agreement with Capstone Law to complete the bankruptcy case.

      iii.    The Zero-Down Option: Enter into a pre-petition retainer agreement for

the preparation and filing of the Initial Bankruptcy Papers for $0 down, with the option to

either proceed *pro se*, hire another attorney, or enter into a post-petition fee agreement of

$2,400 (which included fees and costs) for the prosecution of the case through the entry

of a discharge. If the Debtor selected the Zero-Down option, he could pay the $2,400 in

ten monthly installments of $240.[10]

    8.    Mr. Weekes then explained to the Debtor the following: (1) the terms of the Pre-

petition Agreement and its limited scope of services (e.g., Capstone Law would only file the

Initial Bankruptcy Papers); (2) the Debtor's options to proceed *pro se*, hire another attorney, or

hire Capstone Law; and (3) the terms of the Post-Petition Agreement wherein Capstone Law

would continue to represent the Debtor after the bankruptcy filing for $2,400 that could be paid

in monthly installments.[11]

    9.    After these explanations, the Debtor selected the Zero-Down Option because: (1)

he did not have the funds to pay a retainer; (2) even though Capstone Law charged a higher fee,

---

[10] ECF No. 126, Ex. A: "Declaration of Russell B. Weekes," ¶ 13, ECF No. 126 ( "Weekes' Declaration");
and Ex. D: Debtor's 2004 Transcript, 21-24, 37-39.

[11] Memorandum Decision at 3,¶ 6; ECF No. 126, Ex. A: Weekes' Declaration, at ¶ 15; Ex. B: "Affordable
Bankruptcy Retainer Agreement a/k/a Two Contract Procedure," ¶¶ 1, 3-4 and "Two-Contract Disclosure"
(collectively the "Pre-Petition Agreement"); Ex. C: "Completion Retainer Agreement & Promissory Note," ¶ 1 (the
"Post-Petition Agreement"); and Ex. D: Debtor's 2004 Transcript, pp. 21-24 and 37-39.

the Debtor could pay that fee over ten months after the bankruptcy filing; and (3) the Debtor

feared a garnishment of his wages from the collection lawsuit.[12]

10.      On October 29, 2016, the Debtor personally signed the Pre-Petition Agreement,

the Two-Contract Disclosure, and the Third-Party Disclosure and Consent. Mr. Weekes also

instructed the Debtor in writing on what the Debtor needed to do and the information to be

provided before Capstone Law could file the bankruptcy petition.[13]

11.      The above-mentioned documents included a multitude of disclosures,

explanations, and warnings regarding the fee arrangement, the bankruptcy process, the possible

use of BK Billing as a third party to collect payments, and the importance of providing true,

complete, and accurate information to Mr. Weekes.[14]

12.      Capstone Law also provided the Debtor a detailed questionnaire that elicited the

information needed to prepare the bankruptcy papers. The Debtor completed the questionnaire,

signed it in ink, and returned it to Capstone Law.[15]

13.      Capstone Law also provided the Debtor with a document titled "General

Information and Instructions" (the "Instructions"). The Instructions contain almost fifty

paragraphs of disclosures and explanations that the Debtor was required to read and initial.

Except for the paragraph on student loans, the Debtor initialed all of the disclosures and

explanations and signed the document in ink.[16]

---

[12] Memorandum Decision at 4, ¶ 7 and ECF No. 126, Ex. D: Debtor's 2004 Transcript, pp. 10, 21-24, 37-39.

[13] Memorandum Decision at 4, ¶ 8, and ECF No. 126, Ex. B: Pre-Petition Agreement, and Ex. D: Debtor's 2004 Transcript, pp. 22-24.

[14] Memorandum Decision at 4, ¶ 9.

[15] Memorandum Decision at 4, ¶ 10, and ECF No. 36, Ex. B: "Client Questionnaire,".

[16] Memorandum Decision at 4, ¶ 11.

14.     As to bankruptcy papers requiring the Debtor's signature, Capstone Law utilized Adobe Sign[17] to send the Debtor documents for review and to obtain an e-signature on such documents. The Debtor signed all the Initial Bankruptcy Papers using Adobe Sign. Capstone Law maintained appropriate log entries of the documents emailed to the Debtor, the documents reviewed by the Debtor, and when the Debtor signed the documents using Adobe Sign.[18]

**B.     The Chapter 7 Bankruptcy Filing**

15.     On November 22, 2016, Capstone Law filed the Chapter 7 petition for the Debtor along with the Initial Bankruptcy Papers.

16.     The Debtor's bankruptcy papers included an application to pay the filing fee in installments with $200 due on December 6, 2016, and a final installment of $135 due on January 2, 2017.[19] Capstone Law timely made the filing fee installments on behalf of the Debtor, with this amount being part of the Post-Petition Fee Agreement.[20]

17.      After filing the petition, the Debtor electronically signed the Post-Petition Agreement, the Check Draft Authorization, and the Third-Party Disclosure and Consent.[21] These documents likewise contain detailed disclosures and explanations as to the attorney fee arrangement, the legal services to be provided, and the Debtor's responsibilities.[22]

---

[17] Adobe Sign is an established e-signature program that complies with the requirements of the ESIGN Act (15 U.S.C. ch. 96), which is intended to give electronic signatures the same legal effect as a holographic signature.

[18] Memorandum Decision at 4, ¶ 12, and ECF No. 126, Ex. G: "Adobe Sign Document History."

[19] ECF No. 6, Order to Pay Filing Fee in Installments.

[20] Memorandum Decision at 5, ¶ 14.

[21] ECF No. 126, Ex. A: Weekes' Declaration ¶ 16 and Ex. C: Post-Petition Agreement.

[22] Memorandum Decision at 5, ¶ 15.

a.      Specifically, the Post-Petition Agreement states that the total cost would be $2,400, and that the Debtor would pay this amount in ten monthly installments of $240.

b.      The Debtor e-signed the Check Draft Authorization that provided for the automatic withdrawal of the monthly installments, but its payment schedule is different from the Post-Petition Agreement in that it provides for ten monthly payments of only $200, for a total of $2,000. The Check Draft Authorization also provided that the payments would be drawn from the account of Savannah Smith, the Debtor's non-filing spouse.[23]

c.      The Debtor also e-signed the Third-Party Disclosure and Consent, which explained Capstone's factoring relationship with BK Billing, that would act as the collection agent on the law firm's behalf.

**C.      The BK Billing Factoring Service**

18.      Because the Debtor agreed that Capstone Law would represent him post-petition, Capstone Law prepared and filed all the other required bankruptcy papers, which were also signed electronically by the Debtor.[24]

19.      The Form 2030, Disclosure of Compensation of Attorney for Debtor ("Disclosure of Compensation"), which is required by Bankruptcy Rule 2016, states that Capstone Law

---

[23] The Debtor's Motion for Sanctions asserts that the non-filing spouse closed her account when she lost her job, that the Debtor provided his mother's credit card information to make one payment to BK Billing, and that BK Billing wrongfully continued to bill the mother's credit card (see Debtor's 2004 Transcript at 119–23, ECF No. 126). However, BK Billing is not a party before the Court; thus, for purposes of this motion, the Court will not consider these allegations or issues arising therefrom.

[24] Memorandum Decision at 6, ¶ 22.

agreed to accept $2,007 for legal services (exclusive of costs), and that it had not received a retainer.[25]

20.     Under the Post-Petition Agreement and the Check Draft Authorization, the Debtor has paid a total of $1,800 towards the $2,007 attorney fee.[26]

21.     An attorney for Capstone Law represented the Debtor at a meeting of creditors, provided documents to the Chapter 7 Trustee in accordance with 11 U.S.C. § 521,[27] and otherwise assisted the Debtor in all tasks necessary for the Debtor to qualify for and receive a discharge on March 15, 2017.[28] No party has requested a revocation of the Debtor's discharge under § 727(d), and the one-year limitation period for bringing such an action expired on March 15, 2018 (see § 727(e)).[29]

22.     On April 12, 2017, the Chapter 7 Trustee filed a no-asset report, and the case was closed on May 15, 2017.[30]

23.     The docket for the Debtor's case establishes that it was uneventful in that no motions or adversary proceedings were filed, the Debtor was not required to turnover to the Trustee any assets, and the Debtor received a discharge of over $29,000 in debts within 113 days after the petition date.[31]

---

[25] Memorandum Decision at 6, ¶ 23, and ECF No. 9, Disclosure of Compensation of Attorney for Debtor.

[26] Memorandum Decision at 7, ¶ 24, and ECF No. 126, Ex. E: BK Billing Customer Account for Brett Hazlett.

[27] Unless otherwise specified, all subsequent chapter and section references herein are to Title 11 of the United States Code.

[28] Memorandum Decision at 7, ¶ 25.

[29] *Id.*

[30] *Id.* at ¶ 26

[31] *Id.* at ¶ 27.

**D.**  **Lincoln Law Contacts the Debtor After the Discharge and Closing of His Bankruptcy Case.**

24.     On September 6, 2017, which was after the Debtor received his discharge and the Court closed his case, Andrew Gustafson of Lincoln Law made an unsolicited telephone call to the Debtor. At the time of this phone call, Capstone Law still represented the Debtor in the bankruptcy case. Mr. Gustafson contacted the Debtor to determine why the Debtor had retained Capstone Law over Lincoln Law.[32]

25.     During this phone call, the Debtor complained because BK Billing was drawing funds from the bank account of the Debtor's mother pursuant to an authorization provided by the Debtor. The payments to BK Billing were to satisfy the funds it had advanced to pay Capstone's attorney's fees for representing the Debtor in the Chapter 7 case.[33]

26.     On October 25, 2017, the Debtor and his non-filing spouse met with Andrew Curtis of Lincoln Law. During that meeting, Mr. Curtis "created a new bankruptcy case as if [the Debtor] was coming into my office for the first time to file bankruptcy. We did this to ensure that the documents filed in his case were accurate."[34]

**E.**  **Reopening the Bankruptcy Case**

27.     After its unsolicited contact with the Debtor, Lincoln Law contacted the U.S. Trustee and reported the alleged improprieties of Capstone Law.

28.     On September 25, 2017, the U.S. Trustee filed a motion to reopen the bankruptcy case to review the Capstone Law retainer agreements and Capstone's use of BK Billing to factor

---

[32] ECF No. 43-2, Declaration of Andrew Gustafson; ECF No. 150, Declaration of Brett Jason Hazlett at ¶ 10; and ECF No. 153, Amicus Brief at 2.

[33] ECF No. 150, Declaration of Brett Jason Hazlett at ¶ 10.

[34] ECF No. 27-10, Declaration of Andrew Curtis at ¶ 5.

the post-petition fee. On October 23, 2017, the Court granted the motion. On November 20,

2017, the U.S. Trustee took the Debtor's examination under Bankruptcy Rule 2004.[35]

29.    On November 8, 2017, Lincoln Law filed its motion for sanctions against

Capstone Law. The motion sought the disgorgement of all fees, attorney's fees in bringing the

motion, punitive damages, and a restriction on the e-filing privileges of Capstone Law.[36]

30.    On March 9, 2018, after completing its investigation, the U.S. Trustee filed its

motion for sanctions against Capstone Law based on the following: (1) the marketing of Zero-

Down Chapter 7 bankruptcy services; (2) the bifurcation of bankruptcy services into pre-petition

and post-petition fee agreements; (3) filing the petition and the Initial Bankruptcy Papers for

purportedly no charge; (4) the reasonableness of the $2,400 post-petition fee; (5) the use of BK

Billing to factor and collect the fee; and (6) the propriety of utilizing electronic signatures in

bankruptcy.[37]

**F.    The U.S. Trustee's Motion and Capstone's Opposition**

31.    On March 9, 2018, the U.S. Trustee filed its motion seeking the following relief:

(1) cancellation of the attorney fee agreements with Capstone Law under § 329 and Local Rule

2091-1; (2) sanctions under Local Rules 2090-3, 2091-1(a), and 5005-2(c); and (3) sanctions and

other relief under § 526.[38]

32.    Capstone Law filed an opposition to the Motion,[39] and later filed a Motion for

Summary Judgment.[40]

---

[35] Memorandum Decision at 7, ¶ 28.
[36] ECF No. 27.
[37] Memorandum Decision at 7, ¶ 29.
[38] Memorandum Decision at 8, ¶ 30, and ECF No. 61.
[39] ECF No. 66.
[40] ECF No. 126.

33.     Capstone Law asserted that it made full disclosures that enabled the Debtor to make an informed decision about the use of bifurcated fee agreements. It asserted that the bifurcated fee agreements allowed the Debtor to retain and pay Capstone Law that facilitated the Debtor receiving a discharge without complications. Finally, Capstone Law asserted that its fee of $2,000 was reasonable under § 329, and that its use of electronic signatures does not merit the imposition of sanctions.[41]

34.     At the hearing on Capstone's Motion for Summary Judgment held on January 4, 2019, the parties discussed the need to comply with the Bankruptcy Code and the ethical rules while enabling cash-poor debtors to retain and pay for legal counsel to represent them during a Chapter 7 case.[42]

35.     On April 10, 2019, the Court entered a Memorandum Decision and Order, granting Capstone's Motion for Summary Judgment,[43] finding that:

i.      The procedures and business practices of Capstone in this matter facilitated the Debtor's ability to retain and pay for legal counsel to guide the Debtor through the Chapter 7 process with sufficient competence to expeditiously obtain a Chapter 7 discharge.

ii.     Capstone provided adequate explanations and disclosures of the Debtor's various options to seek bankruptcy relief, which options involved different levels of costs, services, and methods of payment.

---

[41] Memorandum Decision at 8, ¶ 33.
[42] *Id*. at 9, ¶ 34.
[43] ECF Nos. 155 & 156.

       iii.     Based on the services provided by Capstone, the Debtor's financial circumstances at the time of the bankruptcy filing, and the Debtor's successful receipt of a discharge, the Court finds that the $2,400 fee charged by Capstone was reasonable.

       iv.     Capstone's use of e-signatures in this case does not merit the imposition of sanctions.

       v.     There is no basis for the Court to impose sanctions or to order Capstone to refund any portion of the payments received from the Debtor.[44]

**G.**     **Lincoln Law's Motion and Capstone's Opposition**

36.     On November 8, 2017, Lincoln Law filed a Motion for Sanctions (the "Motion") seeking the following relief: (1) disgorging all fees paid by the Debtor in this case; (2) awarding reasonable attorney fees and costs; (3) restricting Capstone's e-filing privileges, and; (4) assessing punitive damages.[45]

37.     On November 21, 2017, Lincoln Law filed a Notice of Substitution of Counsel.[46] However Lincoln Law has never filed a Form B2030 Disclosure of Compensation of Attorney for Debtor as required by § 329 and Bankruptcy Rule 2016.

38.     On March 29, 2018, Capstone filed a Motion to Dismiss Lincoln Law's Motion for Sanctions.[47] Lincoln Law filed an Objection on April 3, 2018.[48]

39.     On April 5, 2018, Capstone filed a Motion to Withdraw the Reference of Lincoln Law's Motion for Sanctions (as well as the U.S. Trustee's motion for Sanctions), to the Utah

---

[44] *Id.*
[45] ECF No. 27.
[46] ECF No. 29.
[47] ECF No. 67.
[48] ECF No. 72.

District Court.[49] On July 6, 2018, the District Court denied the motion to Withdraw the Reference.[50]

40.     On November 12, 2018, Lincoln Law filed an Amended Motion for Sanctions ("Amended Motion"), seeking the following relief: (1) disgorgement of all fees paid by the Debtor in this case under § 329; (2) restriction of Capstone's e-filing privileges; (3) sanctions and other relief under § 105 and § 362(k).[51]

41.     In their Amended Motion, Lincoln Law essentially incorporated the same arguments as the U.S. Trustee, and asserted that Capstone Law did not perform the essential services for which he had been hired, and the services that were provided ran afoul of the law.[52] Specifically, that Capstone's use of an electronic signature and collection of payments after the filing of the bankruptcy petition pursuant to the bifurcated fee arrangement had an adverse impact on the Debtor and diminished the integrity of the bankruptcy system.[53]

42.     Capstone Law filed an opposition to the Amended Motion,[54] and later it filed this Motion for Summary Judgment.[55]

43.     Lincoln Law filed a Reply on December 20, 2018.[56]

44.     On January 4, 2019, at the hearing on Capstone's Motion for Summary Judgment against the U.S. Trustee, the Court, acknowledging that Lincoln Law's Amended Motion and

---

[49] ECF No. 80.
[50] ECF No. 90.
[51] ECF No. 117.
[52] *Id.*
[53] *Id.*
[54] ECF Nos. 128 & 132.
[55] ECF No. 136.
[56] ECF No. 145.

Capstone's MSJ involved the same operative facts and allegations, suspended all other matters in the case, pending the resolution of the U.S. Trustee's Motion.[57]

45.      As stated above, on April 10, 2019, the Court entered a Memorandum Decision and Order, granting Capstone's Motion for Summary Judgment against the U.S. Trustee's Motion for Sanctions.

46.      On May 3, 2019, the Court held a status conference to address Capstone's unresolved Motion for Summary Judgment against Lincoln Law.[58] The Court ordered that the parties were to submit supplemental briefing on the MSJ, focusing on whether a violation of the automatic stay occurred under 11. U.S.C. § 362 and if so, whether BK Billing was solely liable or whether Capstone Law was jointly liable for any damages that may have resulted from such a violation.[59]

47.      Capstone Law subsequently filed Supplemental Briefing,[60] and Lincoln Law filed a Responsive Supplemental Briefing.[61]

48.      After reviewing the Supplemental briefing of the Parties, the Court took the Defendants' Motion for Summary Judgment of Debtor's Motion for Sanctions under advisement.[62]

---

[57] See Minute Entry, January 4, 2019.
[58] See Minute Entry, May 3, 2019.
[59] ECF No. 160.
[60] ECF Nos. 161 & 162.
[61] ECF Nos. 163 & 164.
[62] ECF No. 166.

## III.    ANALYSIS

### A.  Utilizing the Same Operative Facts, this Court Has Already Determined That Defendant's Claims for Post-Petition Services Arose Under a Post-Petition Agreement That is Not Subject to § 362.

On April 10, 2019, the Court issued and entered its Order Granting Motion for Summary Judgment of the U.S. Trustee's Motion for Sanctions and Memorandum in Support, (the "Prior Ruling").[63] Using the same operative facts, the Prior Ruling held that the Debtor's payments arose under a post-petition agreement signed by the Debtor, for services that arose post-petition.[64] Specifically, the Prior Decision and Order made the following factual findings and conclusions of law:

> 1. Weekes explained to the Debtor: "(1) the terms of the Pre-petition Agreement and its limited scope of services (e.g., Capstone Law would only file the Initial Bankruptcy Papers); (2) the Debtor's options to proceed pro se, hire another attorney, or hire Capstone Law; and (3) the terms of the Post-Petition Agreement wherein Capstone Law would continue to represent the Debtor after the bankruptcy filing for $2,400 that could be paid monthly installments."[65]

> 2. "After filing the petition, the Debtor electronically signed the Post-Petition Agreement, the Check Draft Authorization, and the Third-Party Disclosure and Consent."[66] (Emphasis added.)

> 3. "Specifically the Post-Petition Agreement states that the total cost would be $2,400, and that the Debtor would pay this amount in ten monthly installments of $240."[67]

> 4. "Under the Post-Petition Agreement and the Check Draft Authorization, the Debtor has paid a total of $1,800 towards the $2007 attorney fee."[68]

---

[63] ECF Nos. 155 & 156.

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.*

5. "[T]he Court finds that Weekes had a reasonable, legal basis to employ bifurcated fee agreements when clients were unable to pay the full retainer prior to their bankruptcy filing."[69]

6. "Further, the Court is likewise adamant that fees for pre-petition services should not be directly or surreptitiously slipped into the fee charged for post-petition services…As noted below, <u>the Court finds that Capstone's fees in this case were for post-petition services, and that they were reasonable</u>."[70] (Emphasis added.)

The foregoing establishes that Capstone's attorney's fees did not arise under the pre-petition agreement as alleged by Debtor. Rather, they arose under a post-petition agreement, which is not governed by § 362 because the "claim"—or right to payment—does not arise "before the commencement of the case under this title."[71] Any order finding violation of § 362 would be inconsistent with the Court's prior ruling and finding of facts. Furthermore, the undisputed facts in this case demonstrate that Capstone did not have a claim against the Debtor that was stayed by § 362.

The plain language of § 362 states that the "automatic stay has no effect whatsoever upon claims which arose after the petition."[72] As cited by Capstone Law, a pair of cases from the Middle District of Florida, *Walton I*[73] and *Walton II*,[74] illustrate the distinction between pre-petition and post-petition claims. In *Walton I*, the attorney used a pre-petition retainer agreement that required the debtor to sign postdated checks that the law firm would cash post-petition for

---

[69] The Court cited, *inter alia*, *In re Waldo*, 417 B.R. at 895-96 (Bank. E.D. Tenn. 2009), that disapproved of counsel's use of post-dated checks but endorsed bifurcated services with appropriate protective disclosures and processes.

[70] *Id.*

[71] 11 U.S.C. § 362.

[72] *See In re Grynberg*, 113 B.R. 709, 711-12 (Bankr. D. Colo. 1990); *Coll. Pharmacy, Inc. v. Ruth*, Civil Action No. 06-cv-00540-WYD-BNB, 2006 U.S. Dist. LEXIS 89520, 2006 WL 3618314 (D. Colo. Dec. 11, 2006).

[73] *Walton v. Clark & Washington, P.C. ("Walton I")*, 454 B.R. 537, (Bankr. M.D. Fla. 2011).

[74] *Walton v. Clark & Washington, P.C. ("Walton II")*, 469 B.R. 383, (Bankr. M.D. Fla. 2012).

post-petition services.[75] The *Walton I* court found that depositing the postdated checks violated the automatic stay because the payment obligation arose under the pre-petition agreement.[76] *Walton II* involved the same law firm and Chapter 7 trustee, but involved a two-contract approach, whereby one contract covered pre-petition services, and a second, post-petition agreement covered post-petition services.[77] The *Walton II* court found that the attorney's two-contract approach did not violate the automatic stay, it was not in violation of the ruling in *Walton I*, and it complied with the Bankruptcy Code because the payment obligation arose under the post-petition agreement.[78]

As previously found by this Court, Capstone Law did not have a claim against the Debtor that was stayed by § 362: "After filing the petition, the Debtor electronically signed the Post-Petition Agreement, the Check Draft Authorization, and the Third-Party Disclosure and Consent."[79] The Court further found: "Under the Post-Petition Agreement and the Check Draft Authorization, the Debtor has paid a total of $1,800 towards the $2,007 attorney fee."[80] As this Court has found that all payments made by the Debtor were paid pursuant to post-petition agreements, there can be no violation of 11 U.S.C. § 362 and consequently, no basis to justify sanctions under § 362(k).

## B.  The Debtor Suffered No Compensable Damages

While acknowledging the Court's Prior Decision and Order, Lincoln Law continues to maintain that Capstone Law violated the automatic stay and should be sanctioned under §

---

[75] *Walton I,* 454 B.R. at 540.

[76] *See id.* at 546.

[77] *Walton II*, 469 B.R. at 384.

[78] *See id.* at 387-88.

[79] *See* ECF No. 155, ¶ 6.

[80] *Id.* ¶ 24.

362(k). Yet, Lincoln Law has repeatedly failed to demonstrate how the Debtor was actually

harmed in any way by Capstone Law. In their the Supplemental Brief, Lincoln Law asserts that

the Debtor suffered the following damages: (1) $600 in principal; (2) accrued interest on the

$600 of $142.13; (3) all amounts paid by the Debtor prior to the entry of his discharge; (4)

damage to the Debtor's relationship with his mother; and (5) attorney fees because Capstone

Law advanced "baseless, nonsensical legal pleadings" in this case.[81] The Court disagrees.

First, the Court has found that all charges made against the Debtor were for post-petition

services relating to a post-petition contract. Further, after careful scrutiny, this Court determined

that all the charges were reasonable, and that the outcome of the bankruptcy case was completely

satisfactory as to the Debtor. Specifically, nearly three years ago, the Debtor was in need of an

immediate bankruptcy filing and lacked the funds to pay an upfront retainer to Lincoln Law.

After reviewing his options, the Debtor made a choice to retain Capstone Law, who filed and

prosecuted the Chapter 7 case with sufficient competence for the Debtor to receive a prompt

discharge of his debts without complications and without the turnover to the trustee of any of his

assets.

The Debtor's real complaint arises not from Capstone's legal representation or the results

of his bankruptcy filing but from his post-petition obligation to pay for the cost of those services.

The Debtor is an adult who, based on his inability to pay an up-front retainer, made an informed

business decision to enter into a post-petition agreement for BK Billing to advance Capstone's

legal fees and to repay BK Billing with monthly installments of $200 each for ten months.[82]

---

[81] ECF No. 163.

[82] In his 2004 examination (ECF No. 126-5), the Debtor testified that he was "desperate" to file his
bankruptcy case (p. 19 and 21), that he understood his options were to pay Lincoln Law an up-front retainer of
$1,200 or to pay Capstone Law $2,400 post-petition, and that he agreed to Capstone's terms (p. 22 and 24). While
the Debtor testified that he did not recall hearing about BK Billing during his meetings with Capstone Law, on

Having received the benefit of this contractual bargain (e.g., legal representation in a successful Chapter 7 case), the Court will not, without more, relieve the Debtor from his obligation to pay for those services.[83] Consequently, the Court sees no basis to award the Debtor monetary damages of $600 plus interest.

For the same reason, all the amounts paid by the Debtor prior to receiving a discharge are likewise inapplicable. Even if this Court were to find that the Capstone's post-petition conduct amounted to some sanctionable activity, Lincoln Law has not pled a cause of action under § 524. Violations of the discharge injunction are facilitated under the Court's contempt powers, using a standard of clear and convincing evidence. The evidence fails to establish any sanctionable, post-petition activity by Capstone Law or Mr. Weekes.

The Court will also not consider the alleged "damage" arising from the Debtor's strained relationship with his mother. When the Debtor had difficulty making his monthly payments to BK Billing, he provided BK Billing with his mother's account information. The Debtor asserts that he requested BK Billing to draw only one monthly payment from that account, but that BK Billing continued to draw the payments from his mother's account. However, the Debtor has presented no evidence to support his claim that the authorization was limited to a single withdrawal. More importantly, the Court lacks jurisdiction over BK Billing and this dispute, and the Debtor has other remedies in other courts he can pursue if he believes he has a cause of action against BK Billing.

---

October 29, 2016 he nonetheless signed the Third-Party Disclosure and Consent containing the agreement to pay BK Billing for Capstone's legal fees (ECF No. 126, Ex. E).

[83] *See Strohm v. Clearone Commc'ns., Inc.*, 308 P.3d 424 (Utah 2013) ("But nothing in our rules [of professional conduct] requires or even suggests that we can use that standard as a basis for invalidating otherwise-enforceable contractual provisions.").

As to punitive damages, at the time of the Debtor's bankruptcy filing, there was no clear guidance as to the propriety of bifurcated fee agreements. Further, Capstone Law has changed its procedures to comply with this Court's prior ruling and it has ended its use of BK Billing to finance attorney's fees. Based on these considerations, there is no basis or need for punitive damages to deter recidivism.

### C.   Lincoln Law Has Not Complied with the Compensation Disclosure Requirement of § 329.

As a final matter, Lincoln Law has failed to comply with the disclosure requirements of the Bankruptcy Code. Section 329(a) requires every debtor's attorney to file a statement of compensation in every case. Bankruptcy Rule 2016 requires that such statement be filed within 14 days after any fee arrangement not previously disclosed, and that the disclosure must include all compensation paid or promised, all services to be rendered, the source of payment, and any fee sharing agreement. The purpose of this disclosure is to prevent overreaching by an attorney and to enable the court to determine if the fees were reasonable even if there is no objection to the fees.[84]

Therefore, Lincoln Law is given 14 days to file the required statement of compensation including any amounts actually paid towards such fees by either the Debtor or other parties. The Court will then review the statement and determine if additional action is required. Further, Lincoln Law shall not accept any payments for its attorney's fees or costs incurred in this case without an order of the Court.

---

[84] 3 Collier on Bankruptcy, ¶ 329.01 (16th 2019). See also Fed.R.Bankr.P. 2017(b): "On motion by the debtor, the United States trustee, or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive . . . ."

## IV.    CONCLUSION

Under Fed. R. Civ. P. 56(a), as incorporated into bankruptcy proceedings by Fed. R. Bankr. P. 7056, the Court is required to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The parties do not dispute the facts as set forth herein. For the reasons stated above, the Court grants summary judgment finding that neither the actions of Capstone Law nor Mr. Weekes, as described in the Court's findings of fact, violated the automatic stay of § 362.

———ooo0ooo———

### DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing *Memorandum Decision On Motion For Summary Judgment (Docket No. 136)* shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

- Leah J. Aston lja@lincolnlaw.com

- Laurie A. Cayton tr laurie.cayton@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov

- Steven M. Rogers srogers@roruss.com, nrussell@roruss.com;rorusslaw@gmail.com;paralegal@roruss.com

- Kenneth A. Rushton tr KRus8416@aol.com, UT01@ecfcbis.com

- Tessa Meyer Santiago tms@lincolnlaw.com, lincolnlaw.tms@gmail.com

- United States Trustee USTPRegion19.SK.ECF@usdoj.gov

- Russell B. Weekes ecf@capstonelaw.net

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

None.